472 So.2d 1 (1985)
LOUISIANA STATE BAR ASSOCIATION
v.
Mack I. FRANK.
No. 81-B-0461.
Supreme Court of Louisiana.
June 28, 1985.
Thomas O. Collins, Jr., Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Melairie, Roland J. Achee, Shreveport, Gerald F. Thomas, for applicant.
Lolis Edward Elie, New Orleans, for respondent.

DISCIPLINARY PROCEEDING
LEMMON, Justice.
This disciplinary proceeding was instituted by the Committee on Professional Responsibility of the Louisiana State Bar Association after respondent was convicted in federal court of a one-count violation of 18 U.S.C. §§ 2314 and 2 (1970) by being a principal to the interstate transportation of a counterfeit security. Because the conviction was for a serious crime which reflected on respondent's moral fitness to practice law, this court suspended respondent from the practice of law on March 2, 1981 and ordered the Committee to institute disciplinary proceedings. Articles of Incorporation, La. State Bar Ass'n., Art. 15, § 8(4). After the conviction became final, the Committee filed this proceeding on January 5, 1982. Respondent failed to answer the petition within the prescribed time.
*2 A hearing scheduled for November 10, 1982 was rescheduled at respondent's request to November 24, 1982. However, respondent did not appear at the appointed hour, and the commissioner held the hearing without him. When respondent appeared at the commissioner's office after the hearing had concluded, the commissioner allowed him to make a statement for the record and also afforded him the opportunity to submit sworn affidavits of any mitigating circumstances and evidence of respondent's efforts to earn a living and to rehabilitate himself. Respondent did not submit any evidence, but another attorney wrote a letter to the commissioner attesting to respondent's character and integrity.
The commissioner rendered a report, noting that the conviction of interstate transportation of a counterfeit security was a serious crime which reflected on respondent's moral fitness to practice law, that there were no mitigating factors in his favor and no evidence of efforts to rehabilitate himself, and that respondent had not made a serious effort to participate in the proceedings. The commissioner recommended permanent suspension from the practice of law.
When the matter was first scheduled for oral argument, this court remanded the case to allow respondent's new attorney to present evidence of mitigating factors. At the hearing on remand, ten persons of substantial standing in the community testified that respondent had been rehabilitated. Nevertheless, the commissioner found that the crime is serious, bears upon respondent's moral fitness and trustworthiness, and "goes to the very heart of the activities of an attorney at law and his dealings in the commercial world, where trust and integrity are absolutely critical". He again recommended permanent suspension as the appropriate discipline.
The Committee concurred in the commissioner's findings of fact and conclusions of law, but recommended disbarment rather than permanent suspension.
When a disciplinary proceeding is based on conviction of a crime, the conviction is conclusive evidence of guilt. Articles of Incorporation, La. State Bar Ass'n., Art. 15, § 8(7)(c). Nevertheless, the facts underlying the conviction of the crime are extremely important in the determination of the appropriate discipline. Therefore, the facts upon which the conviction was based should be presented in some manner (by introduction of the transcript of the criminal trial, by stipulation, or by some other appropriate method) at the hearing before the commissioner so that the commissioner and this court will have the information available for use in the determination of discipline.[1] This information is particularly useful when the conviction was in a federal court or a court of another state and the crime was not a substantive one which parallels a crime defined by Louisiana law.
Here, the federal prosecution was for interstate transportation of a counterfeit security (rather than for a substantive offense such as forgery), and the government was only required to prove that respondent caused the security to be placed into interstate commerce when he knew or should have known that the security was counterfeit. It is therefore important to review the evidence produced at the criminal trial before discussing the appropriate discipline.
The criminal conviction involved a $25,000 cashier's check that Dillard Harrison, Jr. deposited on September 24, 1979 in a Lafayette bank in the account of Delta Oil Maintenance Company. The check was *3 drawn on the Indiana National Bank, was made out to Delta Oil Maintenance Company, and was signed by Alex Wade.
Harrison testified that he had opened the account upon respondent's instructions in the name of Delta Oil Maintenance Company, with Harrison and Mark Johnson authorized to sign the checks. (Other evidence showed that Delta's post office box number listed on the signature card with the Lafayette bank was phony, and testimony by an FBI agent established that respondent had told the agent that he had signed the name of Mark Johnson on checks for another business owned by respondent.) He further testified that he was arrested when he returned several days later at respondent's direction to withdraw $7,000. Harrison implicated respondent in the scheme, stating that all of his activities with the check had been directed by respondent.
According to Harrison's testimony, he worked for respondent as a management consultant in Third World International, a business owned by respondent. He described Third World as a travel agency whose principal activity was planning pre-game entertainment and bus transportation to Southern University's football games outside of Baton Rouge. Harrison also worked for respondent in other sideline businesses.
To prove knowledge on the part of respondent, the government introduced evidence of two other counterfeit checks which had been negotiated either directly or indirectly by respondent before the incident in question. The first was a $3,500 check drawn on the same Indiana Bank. The check was payable to respondent and was signed by Alex Wade (as was the check on which the charge was based). Respondent deposited this check himself in his personal account in a bank in Eunice on April 30, 1979. He had withdrawn the funds by the time the bank learned that the check was counterfeit, and he signed a note for the $3,500 shortage. At the time of trial, he had only paid $90 on the note.
The second previous counterfeit check was one for $5,000 drawn on Midwestern Bank (also in Indiana), made payable to Third World International and Dillard Harrison. That check was also signed by Alex Wade. Harrison testified that respondent gave him the check with instructions to deposit it in Third World's business account in a Baton Rouge bank. Harrison did so on September 14, 1979, depositing $4,000 and withdrawing $1,000 in cash, which he gave to respondent.
Each of the three checks had the same appearance. The $3,500 and $25,000 checks drawn on the Indiana National Bank were numbered 60062 and 60064, and the $5,000 check was numbered 60068. Other evidence established that Alex Wade's name was signed to several forged checks, about six of which were presented to the Indiana National Bank about the same time.
Respondent's defense in the criminal trial consisted primarily of impeachment of Harrison's testimony and an attempt to show that Harrison acted on his own in depositing the check. The testimony of handwriting experts who reviewed exemplars of respondent's and Harrison's handwriting was inconclusive on the issue whether either wrote the checks.
The jury found that respondent was a principal to the crime, and he was sentenced to eighteen months imprisonment. The conviction was affirmed on appeal. Respondent was released after serving over thirteen months.
In this court, respondent contends that the commissioner erred in finding that there were no mitigating factors. He argues that the conviction did not involve his practice of law or any of his clients, and that Harrison was an employee of the travel agency, a business unrelated to his law practice. He further argues that no party lost any money, since the $3,500 check was made good by his having signed a note for the shortage. He points out that the $25.000 check was never honored and that consequently no one lost any money on that *4 transaction.[2] Finally, he emphasizes the testimony of community leaders as to his contention that he is rehabilitated and morally and ethically able to practice law. He suggests that a four-year suspension, retroactive to March 2, 1981, is sufficient discipline.
Conviction of a crime may warrant disbarment, even though the crime was not directly connected with the practice of law. Louisiana State Bar Ass'n. v. Bensabat, 378 So.2d 380 (La.1979). An attorney's duty to obey and uphold the law extends to all laws and not merely to those directly connected with his law practice. Code of Professional Responsibility, Disciplinary Rule 1-102(A)(3)-(5) proscribes illegal conduct involving moral turpitude, conduct involving dishonesty, fraud, deceit, misrepresentation, and conduct that is prejudicial to the administration of justice or reflects on the attorney's fitness to practice law. Any serious violation of law which demonstrates that a lawyer is unable or unlikely to discharge his professional duties may warrant disbarment. Louisiana State Bar Ass'n. v. Phillips, 363 So.2d 667 (La.1978).
In this case, respondent was convicted of placing a counterfeit cashier's check into interstate commerce with knowledge that the security was counterfeit. There was additional evidence of two other counterfeit checks with which he was involved. He failed to appear timely at the first commissioner's hearing to present any mitigating factors. At the second hearing, he presented the testimony of well respected leaders in the community who expressed their belief that respondent was presently rehabilitated, stating that they would not hesitate to employ him in future legal matters.[3] However, there was no evidence of circumstances which would mitigate the seriousness of the crime of which he was convicted. Moreover, both the commissioner and this court reviewed the record of the criminal trial and did not find any mitigating circumstances relating to respondent's involvement in the crime. Although neither respondent's practice nor his clients were involved, the serious crime in which he was a principal caused a loss to the Eunice bank, and a similar loss to the Lafayette bank was only averted through alert police work.
The extreme gravity of the crime, which involved moral turpitude, dishonesty and fraud, reflects heavily on respondent's fitness to practice law. Because of the nature of the crime and the lack of mitigating circumstances relating to the crime itself, we conclude that disbarment is the appropriate discipline and that any evidence relating to respondent's present rehabilitation should be more appropriately addressed to respondent's future application for reinstatement after the passage of the minimum period of time following disbarment.
Accordingly, it is ordered that the name of Mack I. Frank be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked, effective March 2, 1981, the date of this court's order suspending him from the practice of law.
MARCUS, J., concurs.
NOTES
[1] At the hearing, the respondent may offer evidence of mitigating circumstances which is not inconsistent with the essential elements of the crime. Articles of Incorporation, La. State Bar Ass'n., Art. 15, § 8(7)(d). The purpose of that rule is to prevent relitigation of guilt already determined in the criminal proceeding. Nevertheless, there are degrees of culpability and of participation in a crime, and both sides in a disciplinary proceeding based on a criminal conviction should be solicitous of insuring that the commissioner and this court have a complete understanding of the facts underlying the crime.
[2] Respondent did not account for the $5,000 check deposited in the Third World account. Trial testimony indicated that the account was closed with an overdraft status of approximately $4,800.
[3] At the hearing on remand, the Committee introduced evidence intended to show that respondent continued to practice law after his suspension. Such evidence would normally be used as the basis of a new disciplinary proceeding, rather than in connection with the determination of the extent of discipline in this proceeding, but the Committee contends that the evidence was relevant to rebut respondent's evidence of rehabilitation. Arguably, this type of evidence has some relevance for that purpose. In the present case, however, the evidence was not clear and convincing that respondent continued to practice law after his suspension, and we did not consider this evidence in our determination of the appropriate discipline.