MARCUS, Justice.
H. Alva Brumfield, III, a member of the Louisiana State Bar Association, was disbarred in the State of Mississippi. Pursuant to article 15, section 8(b),[1] the Louisiana State Bar Association, through its Committee on Professional Responsibility, docketed a complaint based upon the Mississippi disciplinary sanction. Notice of the proceeding, which involved one specification of misconduct, was sent to respondent by certified and regular mail on July 10, 1987.
The committee held a formal investigative hearing on the specification on August 13, 1987, as provided in article 15, section 3(b) of the articles of incorporation. Respondent was present at the hearing and was represented by counsel and testified in his own behalf. Based on the evidence adduced at the hearing and the decision of the Supreme Court of Mississippi in H. Alva Brumfield, III v. Mississippi State Bar Association, 497 So.2d 800 (Miss. 1986), the committee by a majority vote was of the opinion that respondent had violated the laws of this state relating to the professional conduct of lawyers and to the practice of law of sufficient gravity as to evidence a lack of moral fitness for the practice of law. Specifically, the committee found that respondent was guilty of the misconduct described in the opinion of the Supreme Court of Mississippi, which is, pursuant to article 15, section 8(b), conclusive evidence of the misconduct described.
On January 11, 1988 the committee filed a petition in this court for disciplinary action against respondent, who then filed an answer to the petition. A “Joint Motion to Proceed without Appointment of Commissioner and Waiver of Applicable Rights” was granted by this court. See Louisiana State Bar Association v. Marinello, 514 So. 2d W (La.1987). Based on the ABA Standards, the Louisiana jurisprudence, the U.S. Fifth Circuit’s disciplinary deci *1166 sion and the facts of the case, a majority of the committee recommended a suspension for a period of ninety days.
The specification of misconduct[2] is based upon an alleged violation of DR 1-102(A)(1), (4), (5) and (6), which provides:
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(4) Engage in conduct involving dishonesty) fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
In Louisiana State Bar Association v. Frank, 472 So.2d 1 (La.1985), a disciplinary proceeding based on the conviction of a crime, we held that although the conviction was conclusive evidence of guilt (Art. 15, § 8(a)(7)(c)), the facts underlying the conviction of the crime were extremely important in the determination of the appropriate discipline. Similarly, while the sanctions by the appropriate authority are conclusive evidence of the guilt of the unprofessional conduct on which the sanction was ordered (Art. 15, § 8(b)(3)), we consider, as in Frank, that the facts underlying such finding are extremely important in the determination of appropriate discipline.
Mr. Brumfield’s grandmother died intes.tate in 1964, leaving thirty-six acres of land in Walthall County, Mississippi. The property was left to her children, Mr. Brum-field’s father and four aunts and uncles. In 1974, Mr. Brumfield, his sister and brother inherited in equal shares their father’s one-fifth interest. Mr. Brumfield has never been on the property and only became concerned with its existence following a telephone conversation with Dr. John Barrett, Jr., a resident of Tylertown, Mississippi and the owner of the property neighboring the Brumfield property. Dr. Barrett called Mr. Brumfield for the first time on August 3, 1979, and the two men spoke for about one minute. Dr. Barrett was interested in bujring the Brumfield property, ostensibly for his sons, but only if Mr. Brumfield could deliver 100% ownership. Dr. Barrett again called Mr. Brum-field on August 6, 1979; this conversation lasted about three minutes. The one fact upon which both Dr. Barrett and Mr. Brumfield agree is that Dr. Barrett tendered an offer of $400-$450 per acre for the property. However, Dr. Barrett contended that he also offered Mr. Brumfield $700 per acre if Mr. Brumfield could deliver 100% ownership. On the other hand, Mr. Brumfield denies receiving any offer other than that of $400-$450 per acre. On the same day as the three minute call, August 6, Mr. Brumfield wrote to one of his aunts (Aunt Lib) telling her of the $450 offer and suggesting that they sell the property.[3] He further asked her to get in touch with his other aunts and ask them if they also wanted to sell. On August 10, Mr. Brumfield received another short call from Dr. Barrett. When he tried to assemble the 100% interest, Mr. Brumfield discovered that the one-fifteenth portion owned by his sister would be temporarily unavailable due to an IRS audit of her tax returns. He then determined to acquire *1167 ownership himself in order to facilitate the transfer. On August 13, Mr. Brumfield sent a check to Aunt Lib for $3,250 and enclosed the deed to the property for her to execute and return to him. On August 18, she sent a letter back to him, telling him that she would return the deed as soon as she consulted an attorney. She executed the deed on August 27. On that same day, Mr. Brumfield sent another check and deed to another aunt who executed that deed on August 30. The third aunt executed her deed on September 24. The fourth aunt also executed her deed and Mr. Brumfield had the deeds recorded on September 26. Subsequent to the recordation of the deeds, Mr. Brumfield was contacted by an oil company regarding a lease of the property. Mr. Brumfield executed an oil and gas lease on October 16 for the bonus rental of $500 per acre.
On November 13, his aunts filed suit against him in the chancery court in Mississippi, alleging fraud. They requested an accounting and that the deeds be set aside. On November 30, Mr. Brumfield obtained an appraisal of the land, valuing it at $1000 per acre. After trial, the chancellor found a fiduciary relationship between Mr. Brum-field and his aunts as well as fraud in the transaction. Brumfield was ordered to re-convey the interest acquired from his aunts. Judgment was rendered in favor of each aunt against Brumfield for $3,600 totaling $14,400 (the amount Brumfield had received in bonus rental under the oil and gas lease for their interest). The Mississippi Supreme Court affirmed without an opinion. Mr. Brumfield fully complied with the judgment rendered against him. The Mississippi State Bar Association filed a complaint against Brumfield charging that he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, or other conduct adversely affecting his fitness to practice law in violation of DR 1-102(A)(1, 4, and 6). After a hearing before the disciplinary tribunal, Mr. Brum-field was found guilty of violating DR 1-102(A)(1, 4, and 6). The judgment of the tribunal was that Brumfield should be suspended from the practice of law for ninety days. Mr. Brumfield appealed and the Bar cross-appealed to the Mississippi Supreme Court, which found that Brumfield, “while acting in a representative and fiduciary capacity which he had undertaken, deliberately cheated and defrauded his aunts, and this conduct was a clear and convincing violation of DR 1-102(A)(1, 4, and 6), subjecting him to appropriate discipline by the Bar.” The court permanently disbarred him from the practice of law in the State of Mississippi. Subsequently, the United States Court of Appeals for the Fifth Circuit, recognizing the decision of the Mississippi Supreme Court, ordered Mr. Brum-field suspended from practice before the court for a period of ninety days. It is the disciplinary sanction imposed by the Mississippi Supreme Court that forms the basis of the disciplinary action in this state.
As previously stated, the facts are extremely important in our determination of the appropriate discipline. Moreover, art. 15, § 8(b) provides that the discipline imposed by this court “may be more or less than the discipline imposed by the other jurisdiction.” The Mississippi Supreme Court relied on the August 6 letter from Mr. Brumfield to Aunt Lib to find a fiduciary relationship. This letter communicated to her the $450 per acre offer to purchase the property. The letter did not initiate contact with the other aunts; rather, it requested that Aunt Lib get in touch with them. Mr. Brumfield did not offer to act in behalf of the aunts. He only suggested that they all sell the property. Aunt Lib, in her response to Mr. Brumfield’s August 13 letter specifically stated that she would execute the deed after consulting a lawyer. Moreover, two of the aunts, including Aunt Lib, have submitted affidavits unequivocally denying any attorney-client or other fiduciary relationship with their nephew (Brumfield).[4] Accordingly, we find no factual basis to conclude that Mr. Brumfield had either an attorney-client or fiduciary *1168 relationship with his aunts. The Mississippi Supreme Court further found that Brum-field misrepresented the price Dr. Barrett had offered for the property. This issue was hotly contested. Although Dr. Barrett and Mr. Brumfield agree that an offer of $450 per acre was tendered, Dr. Barrett contended that he also offered Brumfield $700 per acre for 100% interest in the property. Mr. Brumfield strenuously denied this contention, asserting that he only received the $450 per acre offer. Since this issue was found adversely to Mr. Brum-field, we will assume that Dr. Barrett did offer Brumfield $700 per acre for the 100% interest in the property. However, at most, he was merely attempting to purchase all the interests in the property for a lower price than he would receive from Dr. Barrett if he were able to assemble the 100% interest in the property. We do not consider that Brumfield’s conduct under these circumstances rises to the level warranting disciplinary action by this court. It should be noted that Brumfield did not have an attorney-client or other fiduciary relationship with his aunts. The complaint against Brumfield arose out of a civil dispute. Moreover, the events in question took place nine years ago. In addition, Mr. Brumfield has already received much adverse publicity resulting from the sanction imposed by the Mississippi Supreme Court. Mr. Brumfield has never been subject to previous disciplinary sanctions.. He has a fine reputation within the legal community. There were numerous affidavits from past LSBA presidents and attorneys commending his excellent character and integrity.
Lawyers are held to a higher standard than others. Although we in no way condone misrepresentation, we will not discipline an attorney in every instance of questionable conduct. The misconduct must rise to a level that adversely reflects on his fitness to practice law. Mr. Brum-field’s actions do not rise to such level. Therefore, pursuant to our authority and discretion under art. 15, § 8(b), we will not impose any disciplinary sanctions in this case.
DECREE
For the reasons assigned, it is ordered that no discipline be imposed on H. Alva Brumfield, III. Respondent is to bear all the costs of these proceedings.

. Article 15, § 8(b) provides:
(1) When an attorney has been subjected to disciplinary sanctions by another jurisdiction, state or federal, such action shall be grounds for disciplinary action in this state.
(2) Upon learning that an attorney has received disciplinary sanctions in another jurisdiction, the Committee on Professional Responsibility shall secure a certified copy of disciplinary sanctions imposed in another jurisdiction and shall have Committee’s counsel immediately docket it as a complaint.
(3) The certificate of such sanctions by the appropriate authority shall be conclusive evidence of the guilt of the offense or unprofessional conduct on which said sanction was ordered, and it will not be necessary to prove the grounds for such offense in the disciplinary proceedings in this state. The sole issue to be determined shall be the extent of final discipline to be imposed on the attorney in this state, which discipline may be more or less severe than the discipline imposed by the other jurisdiction.
(4)Except as provided hereinabove in this Section, the procedures with reference to proceedings based upon disciplinary sanctions shall be conducted in the same manner as ordinary proceedings including, but not limited to, Sections 3, 4, 5, and 6 of Article XV.

. The specification provided:
That you did engage in conduct involving dishonesty, fraud, deceit, and misrepresentation, and conduct that adversely reflected upon your fitness to practice law in a matter involving a real estate transaction, in which you had a fiduciary duty all as set forth with full particularity in detail in the decision of the Supreme Court of Mississippi in Misc. No. 173 entitled H. Alva Brumfield, III vs. The Mississippi State Bar Association which is hereby attached and incorporated into this Specification as if copied in extenso. That your conduct in this matter was in violation of DR 1-101 [sic] (A)(l, 4, and 6) of the Code of Professional Responsibility of the Mississippi State Bar Association and in violation of Disciplinary Rules DR 1-102(A)(1)(4)(5)(6) of the Code of Professional Responsibility of the Louisiana State Bar Association.

. The letter provided in pertinent part:
I received an offer for the property which Dabba owned in Walthall County in which you own a Vs interest for $450.00 an acre, or $3,240.00 cash.
[[Image here]]
I would think that we should sell the property. If this is agreeable with you, I would appreciate your calling me. I do not think my address for Lucy and Georgia Rae is good. If you could ask them and advise me, I will take care of the documentation.

. Billie Brooks Brumfield and Elizabeth B. Al-lemandi Swaffar attested that: "My nephew was never my lawyer; he never occupied a fiduciary relationship with me, either actual or quasi; and he never occupied any actual or quasi relationship involving any fiduciary duty.”