COLE, Justice.
Petitioner, The Louisiana State Bar Association, through its Committee on Professional Responsibility seeks to have the respondent, Richard I. Farmer, disbarred pursuant to Article XV, Section 8 of the Articles of Incorporation of the Louisiana State Bar Association.[1] Farmer pled nolo con-tendere on December 17, 1986 to theft in the amount of $99.00, in violation of La.R. S. 14:67. We find the respondent was convicted of a serious crime involving fraud and dishonesty which reflects adversely upon his moral fitness to practice law. We order the respondent disbarred in the State of Louisiana retroactive to the date of his suspension.
PROCEDURE
In LSBA v. McGovern, we traced the mandate and procedure by which the court may sanction members of the bar.
This court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. La. Const. of 1974, Art. 5, Sec. 5(B). The rules of this court provide for the creation of the bar association, the code of professional conduct, and the procedure in disbarment suits. Rules of Supreme Court of Louisiana, Rule 19 (1973); La.R.S. 37:211, LSBA v. Edwins, 329 So.2d 437 (1976); In re Mundy, 202 La. 41, 11 So.2d 398 (1942); Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719 (1975). Under these rules, when the bar association’s Committee on Professional Responsibility is of the opinion that a lawyer is guilty of a violation of law or rule of professional conduct of sufficient gravity to show moral unfitness to practice law, it must institute a suit for disbarment or suspension by a petition which shall be served upon the respondent. Louisiana State Bar Association Articles of Incorporation, art. 15, § 6(a). When issue is joined or when the respondent has not appeared to plead or answer within the time allowed, this court may hear the evidence, or we may appoint a commissioner to take the evidence. Id., section 6(b). Regardless of how the evidence is taken, this court must decide, based on the record in the case, both whether the attorney is guilty of the unethical conduct charged, as well as what penalty is appropriate if disciplinary sanctions are warranted. LSBA v. Edwins, supra; LSBA v. Wheeler, 243 La. 618, 145 So.2d 774 (1962). In re Reed, 207 La. 1011, 22 So.2d 552 (1945).
LSBA v. McGovern, 481 So.2d 574 at 576 (La.1986).
Article 15, Sec. 8(a) of the Louisiana State Bar Association Articles of Incorporation sets forth the procedure by which this Court shall discipline members of the bar who have been convicted of a crime. Upon learning a member of the Louisiana Bar has been convicted of a crime, the Committee on Professional Responsibility will first determine whether in its opinion *1150 the crime is a serious one. A serious crime is defined as “a felony or any other crime, the necessary element of which as determined by the statute defining such crime, reflects upon the attorney’s moral fitness to practice law.” Art. 15, Sec. 8(a)(2). The Committee shall report its findings to the Louisiana Supreme Court. If both the Committee and the Court concur in finding the attorney has been convicted of a serious crime the Court may order the attorney suspended from the practice of law and allow the Committee to continue disciplinary proceedings. Art. 15, Sec. 8(a)(4). The Committee will then file a petition in the Supreme Court against the respondent seeking disbarment or other appropriate disciplinary action in the same manner as in ordinary disciplinary proceedings.[2] The Court will appoint a Commissioner to take testimony and to make a report to the Court on his findings of fact and conclusions of law. This Court, however, sits as the trier of fact in disciplinary proceedings and makes the ultimate determination of an appropriate sanction. See La. Const.1974 Art. 5, Sec. 5(B); Louisiana State Bar Association Articles of Incorporation, Art. 15, Sec. 6; see also LSBA v. McGovern, 481 So.2d 574, 576-77 (La.1986).
The conviction of a crime is conclusive evidence that the respondent committed the crime and performed the acts which constitute the necessary elements of that crime. Art. 15, Sec. 8(a)(7)(c), (d). See also, Louisiana State Bar Association v. Pitard, 462 So.2d 178 at 181 (La.1985), and Louisiana State Bar Association v. Frank, 472 So.2d 1 at 2 (La.1985). Both the respondent and the Committee may introduce evidence at the Commissioner’s hearing relevant to a determination of an appropriate sanction. Only those mitigating circumstances not inconsistent with the respondent’s conviction will be considered. Id.
PACTS
Richard Farmer pled nole contendere on December 17, 1986 to theft in the amount of $99.00, a violation of La.R.S. 14:67. The Grand Jury of the 24th Judicial District, Parish of Jefferson, indicted Parmer for conspiracy to commit theft and theft in the amount of $1,595.00. The charges were reduced as the result of a plea bargain agreement. At the time the plea was taken the Court asked the assistant district attorney to give a synopsis of the circumstances surrounding the theft charge. Assistant district attorney, Ronald Boden-heimer, gave the following statement on the record. Farmer was present with his attorney. His attorney made no objections.
THE COURT:
Sir, you’re pleading nolo contendere to the crime of R.S. 14:67 in the amount of $99.00 which occurred between October 15th, 1984 through January 15, 1985. Could we have some illumination on that?
MR. BODENHEIMER:
Yes, your Honor. Sometime between October of ’84 and January of ’85, Mr. Farmer met Mrs. Alice Rowe and Mr. Robert Rowe and shortly after meeting them, the Rowes opened up a telephone solicitation business whereupon they would call people for approximately four or five different supposedly non-profit charitable organizations, one of which and the main one which was Crime Alert. The employees were given a speil (sic) or a card and told what to say and the card would state that it was a non-profit organization and their contributions thereto would be tax deductible. In fact, it was not a non-profit organization. It was at best a profitable organization which was not tax exempt in either the City of Gret-na, the Parish of Jefferson or the State of Louisiana. We checked with all of those sources. There was no status of this particular company. During the course of some two month period, there were some about $9,000.00 or so of checks which came into the account for the company which was the exact same account for Mr. Richard Farmer, attorney at law.- The deposits of about $9,000.00 and some $2,000.00 we can show went out as expenses or salary for Crime Alert. Out the other seven thou *1151 sand, some five thousand I believe was used by Mr. Farmer in his private practice and there’s $2,000.00 unaccountable for or which still at that time was in the hands of Mr. Farmer. There are some fifty to sixty different people who have written checks to the Crime Alert presumably for a Christmas party for underprivileged children. In fact, there was never any money expended to put on a Christmas party or to publish a magazine under Crime Alert except for some, we were able to learn of approximately $500.00 and maybe candy and toys that went to one particular Catholic church out of the nine thousand, five hundred dollars may have been used for this according to Mr. Farmer’s own statements. Those statements, those things were not purchased to his knowledge and he was the only one who controlled the expenses for the corporation so if it could not, corporation but if the company had paid for it, Mr. Farmer should have known.
The people also used a mail drop box on the Westbank where they would have contributions sent or they would have them picked up by different cab companies or different drivers. The mail box drop was opened and signed for by Mr. Farmer. Mr. Farmer had the only key to that box and presumably was the one who would go there and pick up these particular contributions, put them into his account and write some certain checks for them.
Mr. Farmer paid the rent, the utilities and water on the building where the Crime Alert people were soliciting these funds. And that is basically the State’s case. It was inside Jefferson Parish and most of the victims were of Jefferson Parish origin.
PROCEEDINGS
The Committee reported on the respondent’s conviction to this Court on October 15, 1987. The Court in a per curiam decision dated November 10, 1987, found the crime of which the respondent was convicted adversely reflected on his moral fitness to practice law and ordered the respondent suspended from the practice of law pending a resolution of disciplinary proceedings. The Court appointed a Commissioner to hear evidence on whether the respondent should be disciplined by the Court and if so, the extent of discipline to be imposed. At the Commissioner’s hearing the respondent and the Committee were allowed to introduce mitigating and aggravating evidence to be considered in determining an appropriate sanction. The Committee sought disbarment, but the Commissioner recommended a one year suspension. In light of the following aggravating factors, we find the crime committed by the respondent warrants a more serious penalty than that proposed by the Commissioner.
AGGRAVATING FACTORS
The Respondent knew Ms. Rowe received donations of an improper nature before he began allowing her to deposit checks in his bank account. In September of 1984 Farmer represented Ms. Rowe, charged in Jefferson Parish with issuing worthless checks. Ms. Rowe plead guilty to issuing a worthless check in the amount of $652.58. She was given a suspended sentence and placed on probation. The following conditions of probation were written in the plea bargain agreement signed by Mr. Farmer:
“... to make restitution for all NSF checks and reimburse donors for funds collected or to fill original contracts.”
In October of 1984 Ms. Rowe and her husband Robert Rowe began a confidence scam to fraudulently solicit funds for fake charities. The respondent played an integral role in the management of the scam. The operation could not have taken place on as large a scale as it did without Farmer’s participation. Many of the victims made donations by checks which were deposited by Farmer in his office bank account. The Rowes rented office space, set up phone lines, and hired employees. Farmer wrote checks for the rent, utilities, and employees’ salaries.
Farmer himself directly disobeyed a court order and aided his clients in disobeying the order. On November 13, 1984, Judge Grefer issued a preliminary injunc *1152 tion ordering the Rowes to stop soliciting funds for the alleged charities pending an investigation.. With full knowledge of the injunction Farmer opened a post office box to receive contributions in the name of the bogus charities. He allowed Ms. Rowe to use his office and telephone to continue soliciting donations after the injunction was issued.
This Court sanctioned respondent Farmer for two previous ethical violations since his admission to the bar in 1963.[3]
CONCLUSION
Farmer’s prior knowledge of his accomplices’ illegal activity and his continued involvement with, and support of, their fraudulent scam exhibits a moral unfitness to practice law. Public trust and confidence is the cornerstone of the legal profession. Farmer breached that trust by praying on the compassion of his victims. His conduct involved fraud and deceit of the lowest kind. In violating the injunction the respondent took a course of action which was prejudicial to the administration of justice. Farmer’s crime demonstrates he is now unlikely to discharge the professional duties required of an attorney. His behavior reflects adversely on the entire legal community and cannot be condoned.
DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that the name of Richard I. Farmer be stricken from the Roll of Attorneys and his license to practice law in the State of Louisiana be revoked and cancelled at respondent’s cost. The disbarment is retroactive to the date of his suspension.
ATTORNEY DISBARRED.
MARCUS, J., dissents and assigns reasons.

. See id. following La.R.S. 37:219.

. Art. 15 Sec. 6 sets out the procedure for disbarment and suspension suits.

. On March 10, 1986 the Committee on Professional Responsibility issued both a formal private reprimand and a public reprimand to respondent arising from separate complaints, the latter based upon neglect to render meaningful representation and failure to refund an unearned 85,000 fee paid in advance, and the former based upon neglect of a litigation matter entrusted to him.