LEMMON, Justice.*
The Louisiana State Bar Association filed this disciplinary action against one of its members based on the attorney’s federal conviction in Nevada.[1]
Respondent represented Chival International, Inc., a Nigerian corporation, and Chief Valentine Akponar, the corporation’s managing director. The corporation had obtained the rights to operate a gambling casino at a hotel in Nigeria. The charges against respondent and Joseph O’Rayeh, Chival’s employee who was to manage the casino in Nigeria, related to dealings with two investors who advanced money for the purchase of certain slot machines and slot machine routes and for the operation of the casino.
Respondent was charged in Nevada with one count of conspiracy (1) to cause interstate travel in the execution of a scheme to defraud, (2) to obtain money by mail by means of false representations, and (3) to obtain money by wire by means of false representations, in violation of 18 U.S.C. §§ 2314, 1341 and 1343. A second count of the indictment charged respondent with committing wire fraud in violation of 18 U.S.C. § 1343. Respondent entered a plea of nolo contendere on both counts.
According to the memorandum of plea, O’Rayeh solicited a dentist in Las Vegas in early 1981 to invest in the casino project. The dentist agreed to purchase an interest in the project and to invest funds. On August 21, 1981, the dentist traveled to Louisiana and paid respondent $75,000, which respondent represented would be used to secure gambling rights in Nigeria.
Between August and November, 1981, this investor lent O’Rayeh $370,000 to buy gaming equipment and to operate the casino.
In December, 1981, respondent advised the investor that $75,000 was needed for slot machine routes. On December 14, 1981, the dentist mailed a $40,000 cashier’s check from Las Vegas to respondent in New Orleans. The next day the dentist’s wife wired the remaining $35,000 to respondent in New Orleans. The receipt provided to the dentist by respondent stated the $75,000 would be converted to Nigerian currency and would be deposited in the safe at the hotel. However, when the investor visited the hotel in January of 1982 and asked about the $75,000, respondent returned only about $1,800.
O’Rayeh subsequently obtained $70,000 from the dentist in two payments to purchase slot machines and ship them to Nigeria, but mortgaged or sold all of the machines that he purchased. The casino operation and slot machine route were never begun, and none of the investment of over $500,000 was returned to the dentist.
The second investor, a Nevada woman who was solicited by O’Rayeh in Nevada in April, 1982, entered into a partnership with O’Rayeh. In accordance with her agreement with O’Rayeh she traveled to New Orleans on May 23, 1981 to deliver a cashier’s check for $50,000 to respondent, who told her the investment would be furnished to Chival to pay for a license to operate a slot machine route in Nigeria. Respondent used the funds to purchase nine cashier’s checks payable to himself in the total amount of $41,500 and one check payable to O’Rayeh in the amount of $8,500. On August 10, 1982 the investor sent an additional cashier’s check for $6,000 to respondent, who represented that the money would be used for permits to ship the slot machines out of the country. The investor later paid almost $60,000 to O’Rayeh to purchase and ship slot machines to Nigeria. Her total investment of approximately $115,000 has never been returned.
Both investors made numerous attempts to recover their money, but had little success in contacting O’Rayeh or respondent. *565 However, O’Rayeh sent a telegram to the dentist on June 6, 1983, representing that he would begin making reimbursement.[2]
Following his plea of nolo contendere, respondent was sentenced on Count I to three months in prison and on Count II to supervised probation for five years on special conditions that he pay a fine of $10,000 and perform 200 hours of community service. Respondent served three months of evenings in a half-way house in New Orleans and performed community service with the New Orleans AIDS Task Force. As of the date of the commissioner’s hearing, he had completed more than half of the 200 hours required by his sentence. He also paid $200 per month to the U.S. Attorney’s Office in compliance with the court’s mandate.
At the hearing before the commissioner, respondent testified that he transmitted to Chief Akponar all of the funds paid by the dentist and did not personally use any of the funds. The record does not disclose what happened to the $41,500 of cashier’s checks that respondent purchased with the second investor’s funds, but he testified that he did not personally receive any of the funds. While he conceded that he did not contest in court the facts set forth in the plea memorandum, he stated that he would have defended the criminal charges in Nevada if he had had the money to do so.
Respondent further testified that the dentist had obtained a default judgment in a civil suit against him in the amount of $500,000, but had subsequently agreed to accept the sum of $100,000, payable in five years. Respondent has already paid the first payment of $10,000 to the dentist.
As to personal history, respondent stated he was a pilot in the Navy for twenty years, having been honorably discharged in 1961. He graduated from law school in 1968, and he practiced from that time until his voluntary suspension.[3] At the time of the hearing he was sixty-six years old, married with four children, and received his income from social security, military retirement, and a salary as a paralegal and administrator for several attorneys.
Two formal private reprimands have been issued to respondent prior to this proceeding. In June, 1987, he was reprimanded for his failure to represent his client in a civil matter and for his neglect of a legal matter entrusted to him, in violation of Disciplinary Rule 6-101(A)(3) of the Code of Professional Responsibility. In August, 1988, he was reprimanded for his failure to render an appropriate accounting to clients for the sum of money received by him as an advance payment for legal services, in violation of Disciplinary Rule 9-102(B)(3) of the Code of Professional Responsibility and Rule 1.15(b) of the Rules of Professional Conduct, and for his failure to act with reasonable diligence and promptness in representing a client, failure to keep his client reasonably informed about the status of a matter, and failure to comply with reasonable requests for information, in violation of Disciplinary Rule 6-101(A)(3) of the Code of Professional Responsibility and Rules 1.3 and 1.4 of the Rules of Professional Conduct.
In mitigation respondent introduced a letter from his probation officer indicating respondent had reported to the officer as directed and had presented no problems in connection with his probation. Four letters from attorneys attesting to respondent’s trustworthiness, fairness and honesty were also introduced into the record.
In a disciplinary proceeding based on conviction of a crime, the conviction is conclusive evidence of the attorney’s guilt for the charged offense. Louisiana State Bar Association Articles of Incorporation, art. XV, § 8. The sole issue to be determined is whether the crime warrants discipline and, if so, the extent thereof. The attorney is not entitled to offer evidence inconsistent with essential elements of the crime for *566 which he was convicted, but may introduce evidence of mitigating circumstances not inconsistent with guilt.
In the present case the commissioner concluded the crimes of which respondent was convicted were serious crimes reflecting adversely upon his moral fitness to practice law. She noted that one of the essential elements of mail and wire fraud is a conscious intent to defraud and that an essential element of the crime of conspiracy to violate a criminal law is knowledge and intent. Noting further the mitigating factors of restitution and the respondent’s good conduct since his conviction, the commissioner recommended that respondent be suspended from the practice of law for five years.
In its brief in this court the Bar Association recommended a three-year suspension. Interim disciplinary counsel, who took over the prosecution of disciplinary actions during the pendancy of this proceeding, recommended disbarment.
Respondent contends that a one-year suspension, retroactive to his voluntary suspension, is a more appropriate penalty. He argues primarily that O’Rayeh was the principal defendant in the criminal suit and that the federal judge’s lenient sentence and the dentist’s favorable civil settlement reflect respondent’s lesser role in the criminal activities.[4] He also urges that the plea of nolo contendere in a federal court does not require a factual basis for the plea and asserts that the facts stated in the memorandum of plea are not evidence, but that only the plea itself constitutes evidence. Finally, respondent emphasizes the character evidence and the existence of other penalties (the criminal sentence and the default judgment).
Respondent pleaded nolo contendere to serious crimes involving essential elements of intent to defraud and knowledge of fraud, elements which reflect adversely upon an attorney’s moral fitness to practice law. See Louisiana State Bar Association v. Rosenthal, 515 So.2d 797 (La.1987), and Louisiana State Bar Association v. Farmer, 537 So.2d 1148 (La.1989). Furthermore, there were several aggravating factors, including prior disciplinary offenses (two private reprimands), dishonest motive, a pattern of misconduct, and substantial experience in the practice of law. See Standards for Imposing Lawyer Sanctions § 9.1-4 (1986).
On the other hand, O'Rayeh made all of the solicitations for investments and received most of the investors’ funds. Nothing in this record suggests that respondent, who was the attorney for the corporation with the casino license, owned any percentage of the casino venture, personally profited from the invested funds, or had any knowledge of the funds received by O’Ra-yeh (which were most of the funds lost by the two investors).[5] The sentence further indicates that the presiding judge believed respondent was a lesser player in the investment scheme. Although the crimes were serious, we conclude, because of respondent’s age, impressive personal history, and longtime professional record with no other indications of dishonest conduct, that a suspension of three years adequately serves the purpose of disciplinary proceedings.[6]
Accordingly, it is ordered that respondent, Walton B. Noble, be and he is hereby suspended from the practice of law in Louisiana for three years from June 1, 1989. All costs of this proceeding are assessed to respondent.

 Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.

. The record in this proceeding consists of the grand jury indictment filed in United States v. Joseph O'Rayeh and Walton B. Noble, the minutes of the court, the plea proceedings, and the memorandum of plea setting forth the facts which supported a finding of guilt in the criminal case, as well as the testimony by respondent given before the commissioner appointed by this court in this disciplinary proceeding.

. This telegram, allegedly in furtherance of the conspiracy described in Count I of the indictment, was the basis of Count II.

. On respondent’s motion this court on June 1, 1989 suspended respondent during the penden-cy of this proceeding, finding that the crimes of which respondent was convicted were serious offenses.

. Respondent testified that when his longtime friend and client, Chief Akponar, acquired the casino license, he inquired in Las Vegas about a casino operator, and O’Rayeh was hired by Chi-val to conduct the operation.

. According to respondent the hotel was seized in a government coup in late 1983, the dentist's funds in the hotel safe were confiscated, and Chief Akponar was placed under house arrest.

. The fundamental purpose of disciplinary proceedings is not the punishment of the attorneys. Rather, the proceedings serve primarily to safeguard the public, to preserve the integrity of the profession and to deter future misconduct. Louisiana State Bar Association v. O'Halloran, 412 So.2d 523 (La.1982).