*1114 ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This case arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Larry S. Bankston.[1]
UNDERLYING FACTS
On October 4, 1996, respondent, and five other defendants were indicted in the United States District Court for the Eastern District of Louisiana. Of the nineteen-count indictment, respondent was indicted on five counts of racketeering, racketeering conspiracy and interstate communication in aid of racketeering. After trial by jury, respondent was convicted on two counts of the superseding indictment.[2] Essentially, |2these counts alleged respondent, who was a Louisiana State Senator at the time, received a bribe in the form of a “sham” rental of his condominium from a person seeking protection of his video poker interests. Following his conviction, respondent received a 41-month term of imprisonment and a fine of $20,000.
Respondent’s conviction and sentence were affirmed on appeal. United States v. Bankston, 182 F.3d 296 (5th Cir.1999). In finding the evidence sufficient to support respondent’s conviction, the court stated:
Larry Bankston contests the sufficiency of the evidence as to his conviction on two counts of violating the Travel Act, 18 U.S.C. § 1952 (1997). The first count involved an interstate telephone call on June 20, 1995, from Fred Goodson to Meyer Realty to set up what was alleged to have been a bribe in the form of a *1115 “sham” rental of Bankston and his wife’s Gulf Shores condominium. The second involved Fred Goodson’s use of an interstate commercial carrier on June 22, 1995, to forward a $1,555.01 check to Meyer Realty as payment for the condominium rental.
The essential elements for a Travel Act conviction are:
(1) travel or use of the mail or any facility in interstate or foreign commerce;
(2) with the specific intent to promote, manage, establish, or carry on — or distribute the proceeds of — unlawful activity; and
(3) knowing and willful commission of an act in furtherance of that intent subsequent to the act of travel or use of the mail or facility of interstate or foreign commerce. See United States v. Logan, 949 F.2d 1370, 1380-81 (5th Cir.1991). Under Louisiana law, an elected [¡¡official is guilty of public bribery if he accepts anything of apparent present or prospective value with the specific intent to be influenced in his employment, position, or duty. See La.Rev.Stat. Ann. § 14:118 (West Supp.1999).
Bankston attacks the sufficiency of the evidence on three separate grounds: (1) insufficient proof that he had the requisite intent to be influenced in his official conduct by the condominium rental; (2) insufficient proof that the condominium rental amounted to anything more than a legal gift; and (3) insufficient proof that he committed an overt act in furtherance of the alleged bribery after the interstate communications at issue.
The evidence at trial does not support Bankston’s claim. The evidence showed that in February 1995 Bankston and his wife discussed establishing an arrangement whereby a proposed “renter” would pay to use their Alabama condominium despite the renter’s true intention not to do so. Records from Meyer Realty showed that Fred Goodson rented the Bankstons’ condominium and paid for the rental by check. Testimony from FBI agents revealed that the Bankston family, not Goodson, used the condominium during the rental week in question. Finally, the jury heard many intercepted conversations between Bankston and others in which Bankston indicated that he would use the power of his office to protect Goodson’s video poker interests during the legislative session. Based upon this evidence, we affirm Bankston’s conviction on the two Travel Act counts.
182 F.3d at 316.
DISCIPLINARY PROCEEDINGS

Motion for Interim Suspension

Shortly after respondent’s conviction, the ODC filed a motion for interim suspension pursuant to Supreme Court Rule XIX, § 19. Respondent concurred in the motion. On November 19, 1997, this court granted the motion and placed respondent on interim suspension. In re Bankston, 97-2628 (La.11/19/97), 702 So.2d 1386.

\ ¿Formal Charges

After investigation, the ODC filed one count of formal charges against respondent. The formal charges alleged respondent’s federal conviction was a serious crime warranting the imposition of discipline.

Formal Hearing

At the formal hearing, the ODC introduced the federal indictment and opinion of the United States Court of Appeals for the Fifth Circuit affirming respondent’s conviction. The ODC asserted respondent accepted money from an individual with the intent to use the power of his office to protect the individual’s video poker inter *1116 ests. The expected benefit was a two year period of protection from adverse legislation, which was valued at $1.4 million.
Respondent did not deny his conviction, but presented evidence in mitigation. He testified on his own behalf, and introduced the testimony of nine witnesses, including judges, former law partners and long time friends.

Recommendation of the Hearing Committee

The hearing committee made a finding of fact that respondent has been convicted of intentional criminal acts that reflect adversely on his honesty, trustworthiness and fitness as a lawyer. It found his actions reflected adversely on the legal profession and the public perception of the legislature.
Citing Standard 5.11 of the ABA Standards for Imposing Lawyer Discipline, the committee found the baseline sanction for respondent’s misconduct was disbarment.[3] _J¿As mitigating factors, the committee recognized respondent’s absence of a prior disciplinary record, the imposition of other penalties and sanctions (based on respondent’s prison sentence) and his good reputation as a lawyer. As aggravating factors, it found respondent had a dishonest motive, lacked remorse, refused to recognize his wrongdoing, had substantial experience in the practice of law and engaged in illegal conduct.
The committee concluded that the mitigating factors did not outweigh the aggravating factors and did not justify a deviation from the baseline sanction of disbarment. Accordingly, the committee recommended respondent be disbarred.

Disciplinary Board Recommendation

In the disciplinary board, respondent filed an objection to the hearing committee’s recommendation. Respondent contended the hearing committee failed to consider his state of mind at the time of the acts, at which time he allegedly believed that he was permitted to receive the “gift” and was not engaging in criminal conduct. Respondent also pointed out no client was involved or harmed by his acts, and there was no economic loss to the governmental entity. Additionally, respondent objected to the committee’s finding of lack of remorse as an aggravating factor, because he believed he has demonstrated remorse and acceptance of his conviction.
| fiBased on its review of the hearing transcript and the documentary evidence, the disciplinary board found no error in the factual conclusions of the hearing committee. Likewise, it adopted the aggravating and mitigating factors recognized by the committee.
In determining an appropriate sanction, the disciplinary board rejected respondent’s argument that his role in the bribery scheme for legislative protection of the video poker industry was minimal and the value of the “gift” he received (the condominium rental) was negligible, thus justifying suspension rather than disbarment. Citing this court’s opinion in In re: Naccari, 97-1546 (La.12/19/97), 705 So.2d 734, the board observed that an attorney who *1117 alleged he had limited involvement in an insurance scheme was disbarred even though he was not the master-mind of the scheme. Therefore, the board concluded the sanction of disbarment was appropriate.
Neither respondent nor the ODC filed a timely objection in this court to the recommendation of the disciplinary board. However, after the time for filing objections under Supreme Court Rule XIX, § 11(G)(1) had expired, respondent sought to file a “late” objection. This court denied the request, but allowed respondent to file a written brief (without oral argument) on the issue of sanctions.
DISCUSSION
In Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990), this court set forth the considerations present in a disciplinary proceeding based on the attorney’s conviction of a criminal offense:
In an attorney disciplinary proceeding based on the lawyer’s criminal conviction, the issue of his guilt may not be relitigated. Because the lawyer’s conviction, whether based on adjudication or guilty plea, is tantamount to a finding of his guilt beyond a reasonable doubt, the |7clear-and-convincing standard of proof that applies to disciplinary proceedings has already been satisfied. Maryland State Bar Assn. v. Rosenberg, 273 Md. 351, 329 A.2d 106 (1974). Thus, due process does not require a second opportunity for the lawyer to refute the criminal charges. Florida Bar v. Lancaster, 448 So.2d 1019 (Fla.1984). A criminal conviction, based on either an adjudication or a plea of guilt, is considered to be conclusive proof that the attorney committed the essential elements of the offense. LSBA v. Frank, 472 So.2d 1 (La.1985); LSBA v. Loridans, 338 So.2d 1338 (La.1976); In re Esposito, 96 N.J. 122, 474 A.2d 254 (1984); See Articles of Incorporation, La. State Bar Assn., Art. XV, § 8(a)(7)(d); ABA Model Rules for Lawyer Disciplinary Enforcement, Rule 19(E) (1989). In this type of proceeding the sole issue to be determined is whether the crime warrants discipline and, if so, the extent thereof. Id. A disciplinary proceeding inquires into a lawyer’s fitness to practice, not just into whether the alleged misconduct occurred, and therefore matters relevant to aggravation or mitigation of the sanction to be imposed are relevant. LSBA v. Brumfield, 449 So.2d 1017 (La.1984); LSBA v. Frank, supra.
In the instant case, respondent’s conviction conclusively establishes that he accepted a bribe, in the form of a sham condominium rental, in exchange for using his legislative office to protect an individual holding a video poker license from unfavorable legislation. Clearly, this crime is a serious one which reflects upon respondent’s moral fitness to practice law. Supreme Court Rule XIX, § 19(B).
The baseline sanction for convictions involving bribery is disbarment. In re: Mithun, 00-3174 (La.1/5/01), 776 So.2d 426; In re: Hingle, 98-0774 (La.9/18/98), 717 So.2d 636; In re: Collins, 94-2251 (La.11/18/94), 645 So.2d 1131; Louisiana State Bar Ass’n v. Pitard, 462 So.2d 178 (La.1985). Nonetheless, respondent urges us to consider a lesser sanction, based on the presence of mitigating facts.
While we recognize several mitigating factors are present in this case, we find respondent’s actions are' particularly egregious because they occurred while he was a state senator. This court has held an attorney occupying a position of public trust is held to even a higher standard of conduct than an ordinary attorney. In re Naccari, 97-1546 (La.12/19/97), 705 So.2d 734; In re Huckaby, 96-2643 (La.5/20/97), 694 So.2d 906. Respondent’s highly-publicized conviction caused inestimable harm *1118 to the public’s perception of the legal profession. Under these circumstances, we cannot deviate from the baseline sanction of disbarment.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record filed herein, it is ordered that the name of Larry S. Bank-ston be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent, a Baton Rouge attorney, was born on January 22, 1951 and was admitted to the practice of law on April 23, 1976.

. These counts, Count 17 and Count 18, read as follows:

Count 17

On or about June 20, 1995, in the Eastern District of Louisiana and elsewhere, FRED GOODSON and LARRY S. BANKSTON, defendants herein, did use and cause to be used a facility in interstate commerce, that is an interstate wire (telephone) communication between FRED GOODSON in Sli-dell, Louisiana, and a representative of a real estate company in Gulf Shores, Alabama, with the intent to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, bribery, in violation, in violation of title 14, Louisiana Revised Statutes, Section 118, and thereafter did perform and attempt to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity.
All in violation of Title 18, United States Code, Sections 1952 and 2.

Count 18

On or about June 22, 1995, in the Eastern District of Louisiana and elsewhere, FRED GOODSON and LARRY S. BANKSTON, defendants herein, did use and cause to be used a facility in interstate commerce, that is an interstate commercial carrier, to forward $1,555.01 from FRED GOODSON in Slidell, Louisiana to a condominium rental service in Gulf Shores, Alabama, with the intent to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, bribery, in violation, in violation of title 14, Louisiana Revised Statutes, Section 118, and thereafter did perform and attempt to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity.
All in violation of Title 18, United States Code, Sections 1952 and 2.

. Standard 5.11 provides:
Disbarment is generally appropriate when: (a) A lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution, or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) A lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.