ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This disciplinary matter involves consolidated charges instituted against respondents, Fernand L. Laudumiey, III and Dennis S. Mann, two attorneys who are licensed to practice law in Louisiana, but currently on interim suspension.
UNDERLYING FACTS

Factual Background

In 1996, respondents entered into an employment arrangement with Ernest Aia-volasiti and Michael Palmisano, two non-attorney “legal assistants” who had been previously employed by another law firm.[1] Mr. Aiavolasiti and Mr. Palmisano indicated they had personal contact with their former firm’s clients and felt that many of the clients would follow them after their departure from the firm.
| «At the suggestion of Mr. Aiavolasiti and Mr. Palmisano, respondents set up a law office on Canal Street in the City of New Orleans.[2] Respondents gave Mr. Aiavolasiti and Mr. Palmisano full responsibility and unfettered discretion to set up the office, and to handle all administrative matters and case acquisitions, development, and settlements.
In the first year, respondents put up approximately $270,000 of their own funds to finance the firm’s operating account. Mr. Aiavolasiti and Mr. Palmisano had complete access to these funds. When the funds were exhausted after the first six months of the new firm’s existence, respondents set up a $150,000 line of credit with a bank to finance the operation. Respondents did not monitor how the funds were being spent. It later turned out these funds were being used by Mr. Aiavo-lasiti and Mr. Palmisano, with respondents’ knowledge, to pay “runners,” persons who were used to solicit personal injury clients for the firm.
During the same time, Mr. Aiavolasiti and Mr. Palmisano provided a quick “transition” of approximately 800 to 1,000 client files from their prior employer to respondents’ firm. These clients never met respondents, and communicated exclusively with Mr. Aiavolasiti and Mr. Palmisano.
Eighteen months after its opening, respondents closed the Canal Street office based on concerns that the firm was not generating sufficient revenues. Respondents also began to experience trepidation about their arrangement with Mr. Aiavola- *518 siti and Mr. Palmisano, as an insurance company had begun to question clients during depositions about how they came to be represented by respondents. After the Canal |3Street office closed, respondents had no further contact with Mr. Aiavolasiti and Mr. Palmisano.

Federal Investigation

Unbeknownst to respondents, Mr. Aia-volasiti and Mr. Palmisano began cooperating with federal authorities who were investigating the practice of runner-based solicitation. In connection with this investigation, Mr. Aiavolasiti and Mr. Palmisano agreed to meet with respondents while wearing hidden recording devices.[3] Mr. Aiavolasiti and Mr. Palmisano advised respondents that they had been subpoenaed to appear before a federal grand jury in connection with an FBI investigation. Respondents attempted to persuade Mr. Aia-volasiti and Mr. Palmisano to testify that respondents did not know Mr. Aiavolasiti and Mr. Palmisano were paying runners.[4] After the meeting, respondents gave Mr. Aiavolasiti and Mr. Palmisano $2,000 in cash to retain counsel and advised more funds were available.

Federal Criminal Proceedings

As a result of the information developed in the federal investigation, respondents were indicted in the United States District Court for the Eastern District of Louisiana on one count of obstruction of justice, a violation of 18 U.S.C. § 1512(b)(l)(2). The indictment alleged respondents “did knowingly and intentionally corruptly persuade and attempt to persuade [Mr. Aiavolasiti and Mr. Palmisano] with intent to influence | ¿their testimony in an official proceeding. ...” In March 2001, respondents pled guilty to the charges. In the factual basis for the guilty plea, respondents admitted that they had “full knowledge” that Mr. Aiavolasiti and Mr. Palmisano used runners to solicit personal injury clients while employed by respondents.
DISCIPLINARY PROCEEDINGS

Interim Suspension

Following their guilty pleas, respondents and the ODC filed a joint motion in this court requesting that respondents be placed on interim suspension. On April 11, 2001, we placed respondents on interim suspension and ordered that disciplinary proceedings be instituted. In re: Laudu-miey, 01-0925 (La.4/11/01), 787 So.2d 275; In re: Mann, 01-0926 (La.4/11/01), 787 So.2d 275.

Formal Charges

On July 23, 2001, the ODC filed identical sets of formal charges against both respondents. The formal charges set forth the facts underlying respondents’ convictions, but did not set forth any specific rule violations. On August 22, 2001, the ODC filed a “first supplemental and amending formal charge” against respondents, which alleged respondents’ criminal conviction constituted a violation of Rule 8.4 of the Rules of Professional Conduct[5] and war *519 ranted their “permanent disbarment from the practice of law.”
| ¡¿Respondents’ declinatory and peremptory exceptions asserting numerous due process violations were overruled. Subsequently, their disciplinary proceedings were consolidated and respondents filed admissions to the allegations of professional misconduct.
A formal hearing was conducted before the committee. Respondents testified at the hearing and presented mitigating evidence.

Recommendation of the Hearing Committee

The hearing committee found the ODC proved by clear and convincing evidence respondents violated Rule 8.4(b) based on their commission of a criminal act adversely reflecting on their honesty, trustworthiness, or fitness as lawyers. The committee further found the crime of which they were convicted was a “serious crime” for purposes of Supreme Court Rule XIX § 19(B).
As aggravating factors, the committee recognized respondents’ dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law.[6] Also, specifically with regard to respondent Mann, the committee noted prior disciplinary offenses.[7]
In mitigation, the committee recognized character or reputation and, in the case of respondent Laudumiey, the absence of a prior disciplinary record. However, the committee specifically declined to find remorse as a mitigating factor, stating:
^Respondents knowingly entered into an enterprise with non-lawyers to solicit personal injury cases for personal gain. They gave unfettered discretion to individuals who were not lawyers and essentially gave them a blank check to run the operation. Little control or supervision was offered and the non-lawyers answered only to themselves. To suggest that two lawyers with more than twenty years of experience respectively should have known better is an understatement. Financial gain appears to be the underlying motivation. To be remorseful at this time because one has been caught is of little consequence.
Based on these factors, the committee recommended respondents be permanently disbarred from the practice of law.

Recommendation of the Disciplinary Board

The disciplinary board adopted the committee’s findings of fact and conclusion that respondents violated Rule 8.4(b). The board noted that respondents breached duties owed to the public, resulting in actual injury to the legal profession. Relying on the ABA’s Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the committee concluded the appropriate baseline sanction for respondents’ misconduct is disbarment. Apply *520 ing the aggravating and mitigating factors cited by the committee, and relying on the Guidelines for Imposition of Permanent Disbarment set forth in Appendix E to Supreme Court Rule XIX, the board unanimously recommended respondents be permanently disbarred from the practice of law.
Respondents filed objections to the board’s findings and the severity of the proposed sanctions, and reasserted their due process claims. Accordingly, the court docketed the matter for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G)(1)(b).
^DISCUSSION
In their brief and argument to this court, respondents raise two procedural objections to the disciplinary board’s recommendation of permanent disbarment. First, they contend the amendments to Supreme Court Rule XIX, § 10(A)[8] and § 24(A),[9] which provide for the sanction of permanent disbarment, may not be applied to their conduct in this case, as their conduct occurred prior to the August 1, 2001 effective date of the amendments. Second, they assert that the lawyer disciplinary system set forth in Supreme Court Rule XIX is unconstitutional. We will address these arguments separately.

Application of Supreme Court Rule XIX, §10 and § to Conduct Occurring Prior to August 1, 2001

In In re: Rujfalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), the United States Supreme Court held that a lawyer facing discipline is “entitled to procedural due process, which includes fair notice of the charge.” A review of the record in the instant case leaves no doubt that respondents were given fair notice that the ODC intended to seek to Rhave them disbarred on a permanent basis. The ODC filed formal charges against respondents in July 2001. On August 1, 2001, we adopted amendments to Supreme Court Rule XIX, § 10 and § 24 which provide for permanent disbarment. Shortly after we adopted those amendments, the ODC filed a “first supplemental and amending charge” alleging that respondents’ conduct warranted permanent disbarment from the practice of law. This amended charge was filed well in advance of the formal hearing. Respondents concede they had an adequate opportunity to present any appropriate mitigating evidence and to argue against imposition of permanent disbarment. Accordingly, we find no infringement of respondents’ due process rights in these proceedings.
*521 Nonetheless, respondents insist that application of the permanent disbarment amendments to conduct which occurred prior to the effective date of those amendments would be a violation of their substantive due process rights. In essence, respondents submit that if these amendments are applied to pre-amendment conduct, the amendments would violate the prohibition on ex post facto laws found in Article I, § 10 of the United States Constitution and Article I, § 23 of the Louisiana Constitution.
We conclude nothing in Supreme Court Rule XIX, § 10 and § 24 has an ex post facto effect on respondents’ case.[10] In State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272, this court explained the focus of the ex post facto analysis is whether the | mew law redefines conduct or increases the penalty by which the conduct is punishable:
Art. I, § 10 of the United States Constitution and La. Const, art. I, § 23 prohibit ex post facto application of the criminal law by the State. The focus of the ex post facto inquiry is whether a new law redefines criminal conduct or increases the penalty by which the crime is punishable. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001).
Obviously, the amendments to Supreme Court Rule XIX, § 10 and § 24 do not redefine respondents’ conduct, which remains controlled by the Rules of Professional Conduct in effect at the time of their offense. However, respondents contend that the amendments have the effect of increasing the penalty they may receive for their misconduct.
The fallacy in respondents’ argument is that nothing in the amendments to Supreme Court Rule XIX, § 10 and § 24 altered the penalties a lawyer may receive for professional misconduct. Both prior to and after the amendment, the most serious sanction a lawyer may receive under Rule XIX is the sanction of disbarment. The only change effected by the amendments relates to the ability of a disbarred attorney to seek readmission. However, respondents maintain that the elimination of this “right” to seek readmission exposes them to a greater sanction than they could have received at the time of their misconduct.[11]
| ^Respondents have pointed to no constitutional authority or jurisprudence from this court which would indicate a disbarred attorney has a “right” to seek readmission to the bar of this state. The five-year minimum period for seeking readmission, *522 as set forth in Supreme Court Rule XIX, § 24, is a rule of procedure that does not vest any substantive rights in the attorney. The procedural nature of the rule is illustrated by our decisions in In re: White, 00-2732 (La.4/25/01), 791 So.2d 602, and Louisiana State Bar Ass’n v. Krasnoff, 502 So.2d 1018 (La.1987), in which we held that the minimum period for applying for readmission may be extended or otherwise modified at our discretion. Thus, it is clear that our rules create no substantive right to seek readmission.
Our authority to regulate readmission to the bar is a fundamental component in the exercise of our plenary power over the practice of law. La. Const. art. V, § 5(B); Chittenden v. State Farm Mut. Auto. Ins. Co., 00-0414 (La.5/15/01), 788 So.2d 1140; In re: Bar Exam Class Action, 99-2880 (La.2/18/00), 752 So.2d 159; Succession of Wallace, 574 So.2d 348 (La. 1991). Given this court’s absolute discretion over readmission, it is beyond dispute that this court has always had the unfettered authority to refuse readmission to disbarred attorneys, including the right to do so on a permanent basis.
Thus, it is clear the amendments to Supreme Court Rule XIX, § 10(A) and § 24(A) do not represent a substantive change to the bar disciplinary rules, nor do they result in the adoption of a new sanction which did not previously exist. Rather, these amendments simply represent a procedural change to Supreme Court Rule XIX in order to recognize a power this court has always possessed. See Louisiana State Bar Ass’n v. Gremillion, 320 So.2d 171, 174 (La.1975) (amendment to bar disciplinary rules occurring after respondent’s conduct “changed no substantive rights of h respondent; it only provided a better procedural method to handle disciplinary actions.”).
The procedural nature of the amendments is made clear by the language of Supreme Court Rule XIX, § 10(A), which provides “the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.” [emphasis added]. Likewise, we made this reasoning clear in our commentary accompanying the amendment:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in Appendix E to the Rules of Lawyer Disciplinary Enforcement.
In sum, we hold that the amendments to Supreme Court Rule XIX, § 10(A) and § 24(A) do not create a new penalty. Accordingly, we conclude there is no merit to respondents’ argument that these amendments constitute prohibited ex post facto laws.

Constitutionality of Supreme Court Rule XIX

Respondents next raise a constitutional challenge to the entire lawyer disciplinary system as set forth in Supreme Court Rule XIX. They contend the rule is unconstitutional because it improperly delegates the original jurisdiction of this court to non-judges on the hearing committee and disci *523 plinary board, thereby depriving them of access to the courts.
h¡>La. Const, art. V, § 5(B) provides this court has “exclusive original jurisdiction of disciplinary proceedings against a member of the bar.” In exercising this jurisdiction, we have held it is within our authority to appoint a commissioner to report findings and recommendations of discipline to this court. Louisiana State Bar Ass’n v. Sackett, 231 La. 655, 92 So.2d 571 (1957); In re: Mundy, 182 La. 148, 161 So. 184 (1935). While the scheme of Supreme Court Rule XIX provides for a system of hearing committees and a disciplinary board, there is no fundamental difference between this system and the commissioner system which we upheld in Sackett and Mundy,[12]
Despite respondents’ arguments to the contrary, Supreme Court Rule XIX does not delegate our original jurisdiction over disciplinary proceedings to the hearing committees and the disciplinary board. Regardless of the recommendation of the disciplinary board, “it is the ultimate duty of this court to determine under the broad discretion vested in it what action, if any is to be taken against an attorney charged with misconduct....” Louisiana State Bar Ass’n v. Wheeler, 243 La. 618, 145 So.2d 774, 777 (1962). When we consider a disciplinary case, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). Accordingly, we find nothing in Supreme Court Rule li3XIX which contradicts the constitutional grant of original jurisdiction in bar disciplinary cases to this court.
Respondents next argue the system created under Supreme Court Rule XIX is flawed because there is no separation between the prosecutorial and adjudicative functions in the disciplinary system. In support, respondents point out that this court appoints the disciplinary board, which in turn appoints the disciplinary counsel, subject to the approval of this court. According to respondents, this link between the court, the disciplinary board, and the disciplinary counsel results in a merging of the prosecutorial and adjudicative functions.[13]
In Allen v. State Board of Dentistry, 543 So.2d 908 (La.1989), we held that a system whereby the prosecutor of a state board drafted the board’s findings of fact violated due process because it represented a commingling of prosecutorial and adjudicative functions in a single person. Nothing in Supreme Court Rule XIX creates such an impermissible commingling of ‘ functions. While the disciplinary board performs both an adjudicative and prosecutorial function, these functions are separated within the board. Supreme Court Rule XIX, *524 § 2(A).[14] The rule clearly delineates the functions of the disciplinary board and the disciplinary counsel, avoiding the commingling of functions in a single person which we found objectionable in Allen.
Respondents’ arguments relating to the role of this court in the process are also not well founded. As explained previously, the constitution grants this court exclusive original jurisdiction over disciplinary proceedings. The procedures we have enacted | uunder Supreme Court Rule XIX foster the exercise of this jurisdiction and avoid any unfairness to the respondent lawyer.
In sum, we do not find Supreme Court Rule XIX is in violation of any constitutional provisions. Accordingly, respondents’ arguments on this ground are without merit.

Determination of Misconduct and Appropriate Discipline

The charges against respondents are based on their pleas of guilty to the crime of obstruction of justice in violation of 18 U.S.C. § 1512(b)(l)(2). In an attorney disciplinary proceeding based on the lawyer’s criminal conviction, the issue of his guilt may not be relitigated. Because the lawyer’s conviction, whether based on, adjudication or guilty plea, is tantamount to a finding of his guilt beyond a reasonable doubt, the clear and convincing standard of proof that applies to disciplinary proceedings has already been satisfied. In re: Bankston, 01-2780 (La.3/8/02), 810 So.2d 1113; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). In this type of proceeding, the sole issue to be determined is whether the crime warrants discipline and, if so, the extent thereof. Louisiana State Bar Ass’n v. Frank, 472 So.2d 1 (La.1985). The discipline to be imposed depends on the seriousness of the offense, the circumstances of the offense, and the extent of aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Brumfield, 449 So.2d 1017 (La.1984). Clearly, the crime to which respondents pled guilty, obstruction of justice, is a very serious offense. This court has not hesitated to disbar attorneys convicted of similar crimes which relate to the integrity of the judicial process. See In re: Mithun, 00-3174 (La.1/5/01), 776 So.2d 426; In re: Hingle, 98-0774 (La.9/18/98), 717 So.2d 636; In re: Fabacher, 94-0731 (La.12/9/94), 646 So.2d 915; Louisiana State Bar Ass’n v. Pitard, 462 So.2d 178 (La.1985); Louisiana State Bar Ass’n v. Adams, 363 So.2d 418 (La.1978). Respondents’ convictions are particularly egregious because the investigation they sought to impede related directly to runner-based solicitation in the legal profession. Under these circumstances, the only appropriate sanction for their misconduct is disbarment.
Having determined respondents must be disbarred, the only remaining question is whether the nature of respondents’ conduct is so reprehensible as to prohibit them from being readmitted to the practice of law. In Appendix E to Supreme Court Rule XIX, we provided guidelines illustrating the types of conduct which might result in permanent disbarment. Guideline 2 applies to “[i]ntentional corruption of the judicial process, including but not limited to bribery, perjury and subornation of perjury.”
Respondents’ conduct clearly falls within the scope of this guideline. Their willful *525 decision to attempt to subvert the judicial process convincingly demonstrates they lack the good moral character and moral fitness necessary to practice law in this state. Supreme Court Rule XVII, § 3(C). Respondents have blatantly disregarded and ignored the obligations they assumed when they took the oath as members of the bar of this state. In the face of this indisputable evidence of a fundamental lack of moral fitness, we can conceive of no circumstance under which we would grant readmission to respondents. Accordingly, they must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the names of Fernand L. Laudumiey, III, Louisiana Bar Roll number 8126, and Dennis S. Mann, Louisiana Bar Roll number 9095, be stricken from the roll of 11fiattorneys and that their licenses to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondents be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondents in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Mr. Aiavolasiti and Mr. Palmisano were previously employed as legal assistants by the law office of Michael O'Keefe. After Mr. O'Keefe began to experience criminal and disciplinary difficulties arising from allegations that he engaged in runner-based solicitation, Mr. Aiavolasiti and Mr. Palmisano decided to leave the firm.

. Mr. Aiavolasiti and Mr. Palmisano advised respondents Canal Street was a good location as it was on a major bus line and near medical offices. Of course, Canal Street later became infamous as the home of the "Canal Street Cartel,” a reference to the numerous attorneys with offices on that street who engaged in runner-based solicitation activities.

. Ironically, at the meeting, respondent Mann disrobed to demonstrate that he was not wearing a recording device. The other men voluntarily followed suit, but the recording devices were apparently not detected.

. Specifically, respondent Mann made the statement: "[l]et me tell you, how about if you said something like this, tell ’em [the grand jury] you paid runners to bring in cases but don't tell 'em that the lawyers knew anything about it.” Likewise, respondent Laudu-miey instructed Mr. Aiavolasiti and Mr. Pal-misano to tell the grand jury that they had paid runners while working for another lawyer’s office, but not while working for respondents.

.Rule 8.4(b) provides:
It is professional misconduct for a lawyer to:
*519 (b) Commit a criminal act, especially one that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

. Respondent Laudumiey was admitted to the practice of law in Louisiana in 1974. Respondent Mann was admitted in 1981.

. Respondent Mann was publicly reprimanded in 1999 based on disciplinary complaints alleging failure to timely satisfy a debt owed to a third party medical provider, and neglect of a legal matter and failure to supervise an employee resulting in prescription of a client's case. He was admonished for failing to account for and promptly deliver funds or property owed to a client or third party, as well as failing to place the property subject of the dispute in trust.

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court. No lawyer may petition for reinstatement until six months before the period of suspension has expired. No lawyer may petition for readmission until five years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of five years from the time of the effective date of the interim suspension. The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Respondents have cited no jurisprudential authority from this court holding that a change in a bar disciplinary rule can result in an ex post facto law. In Louisiana State Bar Ass’n v. Loridans, 338 So.2d 1338 (La.1976), the respondent argued that application of the 1971 amendments to the Articles of Incorporation could not apply to a crime committed prior to its effective date, as the increased penalties would be an ex post facto law. However, we did not reach the respondent’s ex post facto arguments, as we found his conviction occurred after the amendment. See also Louisiana State Bar Ass’n v. Ponder, 340 So.2d 134 (La.1976) (on rehearing).

. It is noteworthy that respondents were aware of the possibility of permanent disbarment at the time they committed their crimes. In the transcript of the wiretapped conversation of June 15, 2000, respondent Mann observes "they just passed a new thing now that they can disbar you for life.” Ironically, when Mr. Aiavolasiti questions whether permanent disbarment would apply to respondents, respondent Mann replies, "I sure wouldn't like to be the one f* * *ing challenging it.”

. Respondents attempt to distinguish these cases, on the ground they were decided under Article VII, § 10 of the Louisiana Constitution of 1921, which provided this court had "exclusive original jurisdiction in all disbarment cases involving misconduct of members of the bar under such rules as the court may adopt ..." Respondents maintain that the current article, Article V, § 5(B) of the Louisiana Constitution of 1974, does not contain the language "under such rules as the court may adopt,” suggesting this court does not have the power to make rules for the disposition of disciplinary matters. However, respondents fail to recognize Article V, § 5(A) of the 1974 Constitution, which provides this court "may establish procedural and administrative rules
[[Image here]]

. We note that respondents have produced no evidence of an actual commingling of functions; instead, their argument is confined to the structure of the rule.

. Supreme Court Rule XIX, § 2(A) provides, in pertinent part:
The agency [the disciplinary board] is a unitary entity. While it performs both pros-ecutorial and adjudicative functions, these functions should be separated within the agency insofar as practical in order to avoid unfairness.