ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM.
This disciplinary proceeding arises from charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Jacqueline Carr, an attorney licensed to practice law in the State of Louisiana, but currently on interim suspension.
*825 UNDERLYING FACTS
James Moses, a St. Tammany Parish resident, died in 1977. Shortly thereafter, the decedent’s brother, Joseph Moses, who lived in Ohio, retained respondent to handle the decedent’s succession and represent his four minor children. Joseph Moses was appointed administrator of the decedent’s estate and tutor of the four minor children. Through the following years, respondent handled numerous legal matters connected with this succession and tutorship. However, between April 6 and June 12,1984, respondent, without authorization, removed from the succession and/or tutorship accounts a total of $97,000 by writing eight separate cheeks and depositing them into her personal accounts.[1]
Subsequently, Joseph Moses learned that respondent had removed these funds without authorization and demanded she make immediate repayment and render an 1 ?,accounting. When respondent failed to do so, Mr. Moses filed various complaints with law enforcement authorities and with the Louisiana State Bar Association.
The Louisiana State Bar Association, through its Committee on Professional Responsibility (“COPR”), conducted an investigation into respondent’s actions. In 1986, the COPR instituted disciplinary charges against respondent, alleging she converted $97,000 in succession funds.
While the disciplinary charges were pending, the St. Tammany Parish District Attorney’s Office instituted criminal charges against respondent. The case proceeded to a jury trial. On December 1, 1989, respondent was convicted of six counts of theft of $500 or more and two counts of unauthorized use of a movable valued in excess of $1,000. For each of the six theft convictions, respondent was sentenced to six years incarceration at hard labor, fined $3,000, and ordered to pay court costs. As to the two unauthorized use of a movable convictions, respondent was sentenced to two years at hard labor, fined $3,000, and ordered to pay court costs. The trial court ordered the jail sentences to run concurrently and all fines and court costs to run consecutively.
DISCIPLINARY PROCEEDINGS

Interim Suspension

Following her conviction, the COPR moved to place respondent on interim suspension. On February 22, 1990, this court granted the motion and placed respondent on interim suspension based upon her conviction.

|aFormal Charges

On April 1, 1990, shortly after respondent was placed on interim suspension, we adopted Supreme Court Rule XIX, which created the current disciplinary system. We then remanded the case to the disciplinary board for proceedings in accordance with Supreme Court Rule XIX. On December 3, 1990, the ODC filed formal charges against respondent based on her criminal conviction.[2] The charges alleged *826 violations of the following provisions of the former Disciplinary Rules: DR 1-102(A)(1) (violating a disciplinary rule), DR 1-102(A)(3) (engaging in illegal conduct involving moral turpitude), DO 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DO 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), DO 1-102(6) (engaging in conduct adversely reflecting on fitness to practice law), DO 7-101(A)(3) (zealous representation) and DO 9-102(A)(B) (commingling and conversion of client funds).

Formal Hearings

A formal hearing commenced in respondent’s disciplinary proceeding in May 1993. The ODC presented its entire case and rested. Subsequently, respondent began presenting her defense and attempted to argue facts which were inconsistent with the essential elements of the crime of which she was convicted. The hearing committee chair ruled respondent had t.o limit her case to the presentation of mitigating evidence, 1 ¿citing Supreme Court Rule XIX, § 19(E).[3] The hearing was recessed so respondent could take writs to this court.
On June 25, 1993, the court denied respondent’s writ application insofar as she sought to introduce evidence inconsistent with her criminal conviction. However, we granted her request to stay the proceedings pending her appeal of her criminal conviction. In re: Carr, 93-1467 (La.6/25/93), 620 So.2d 828.
Respondent’s criminal conviction and sentence were affirmed on appeal. State of Louisiana v. Carr, 618 So.2d 1098 (La.App. 1st Cir.1993). This court denied her application for writs on April 4, 1994. State of Louisiana v. Carr, 94-0670 (La.4/4/94), 635 So.2d 1116.
In January 1996, the ODC sought to recommence the disciplinary hearing.[4] However, before the hearing formally commenced, respondent claimed she was unable to assist in her defense due to a mental and physical incapacity. After lengthy proceedings, respondent filed a “Motion to Withdraw Petition for Disability Inactive Status,” asserting that she was fully and mentally competent.
The hearing finally recommenced on July 23, 2002. At that time, the ODC introduced the evidence it submitted in the prior formal hearing that took place nine years earlier. Respondent again sought to argue the merits of her conviction, contending she was given an automatic first offender pardon. Over respondent’s objection, the committee limited her argument to the presentation of mitigating circumstances not inconsistent with the essential elements of the crime, in accordance with Supreme Court Rule XIX, § 19(E) and this court’s ruling nine years earlier.
| &Recommendation of Hearing Committee
On September 17, 2002, the hearing committee issued its recommendation finding clear and convincing evidence of violations of the professional rules cited in the formal charges based on her conviction. *827 It found the crime of which respondent was convicted involved fraud, deceit, and misrepresentation in connection with the utilization of funds entrusted to her.
As aggravating factors, the hearing committee recognized respondent’s dishonest or selfish motive, refusal to acknowledge wrongful nature of her conduct, multiple offenses, vulnerability of the victim, indifference to making restitution and illegal conduct. In mitigation, the committee recognized respondent’s first offender pardon and lack of a prior disciplinary record.
Relying on jurisprudence from this court, the committee recommended imposition of disbarment. The committee further proposed that respondent make full restitution prior to her readmission to the practice of law.

Recommendation of Disciplinary Board

The disciplinary board concurred with the hearing committee’s factual and legal findings. Addressing the issue of sanctions, the disciplinary board concluded respondent intentionally violated duties to his clients, the public and the legal system. As evidence, it pointed out respondent deprived her clients of funds, causing serious or potentially serious injury. Additionally, the board noted respondent’s criminal proceedings received extensive coverage in the local media and observed such adverse publicity causes harm to the public’s perception of the legal profession.
Relying on Guideline 1 of Supreme Court Rule XIX, Appendix E, the board found permanent disbarment may be appropriate for “repeated or multiple instances | fiof intentional conversion of client funds with substantial harm.” The board found this guideline was applicable under the facts of this case, because respondent wrote eight separate checks on her client’s succession account over a period of two months and deposited the funds into her personal account. The board concluded respondent exhibited little regard for her clients or for the legal system and that she does not possess the moral fitness to practice law in Louisiana. Accordingly the board unanimously proposed that respondent be permanently disbarred from the practice of law.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
In brief and argument to this court, respondent continues to argue that her conviction was not supported by the evidence and should not form a basis for professional discipline. However, it is well-settled that in an attorney disciplinary proceeding based on the lawyer’s criminal conviction, the issue of his or her guilt may not be relitigated. Because the lawyer’s conviction, whether based on adjudication or guilty plea, is tantamount to a finding of his guilt beyond a reasonable doubt, the clear and convincing standard of proof that applies to disciplinary proceedings has already been satisfied. Supreme Rule XIX, §. 19(E); In re: Bankston, 01-2780 (La.3/8/02), 810 So.2d 1113; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). In this type of proceeding, the sole issue to be determined is whether the crime warrants discipline and, if so, the extent thereof. Louisiana State Bar Ass’n. v. Frank, 472 So.2d 1 (La.1985). While the lawyer may offer evidence of mitigating circumstances, he |7or she may not make any arguments inconsistent with the essential elements of the crime. Louisiana State Bar Ass’n v. Levy, 389 So.2d 51 (La.1980); Louisiana State Bar Ass’n v. Quaid, 368 So.2d 1043 (La.1979); Louisiana State Bar Ass’n v. Hennigan, 340 So.2d 264 (La.1976); Louisiana State Bar *828 Ass’n v. Loridans, 338 So.2d 1338 (La.1976).
In the instant case, respondent was convicted of six counts of theft of funds of $500 or more, in violation of La. R.S. 14:67,[5] and two counts of unauthorized use of a movable valued in excess of $1,000, in violation of La. R.S. 14:68.[6] The essential elements of both of these crimes involve taking property belonging to another without the consent of the other. Thus, we find respondent’s conviction conclusively establishes that she took nearly $100,000 in funds belonging to the succession of Mr. Moses without the consent of the heirs.
1 ^Intentional conversion of client funds is among the most serious professional misconduct a lawyer can commit. See Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986). In Supreme Court Rule XIX, Appendix E, we provided guidelines for the imposition of permanent disbarment. Guideline 1 provides permanent disbarment may be appropriate when the misconduct involves “repeated or multiple instances of intentional conversion of client funds with substantial harm.”
It is clear respondent’s misconduct falls within the parameters of Guideline 1. She engaged in multiple instances of conversion of funds from Mr. Moses’ succession. Her actions caused substantial harm, as she deprived her clients of a significant sum of money and has made no efforts at restitution for over fifteen years.
We do not lightly impose the sanction of permanent disbarment. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sánction here. Respondent’s complete disregard for the welfare of her clients and her utter refusal to acknowledge her wrongdoing lead us to the inescapable conclusion that she does not possess the requisite moral fitness to practice law in this state. In order to protect the public and maintain the high standards of the legal profession in Louisiana, respondent must be permanently disbarred.[7]
*829 IflDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Jacqueline Carr, Louisiana Bar Roll number 3875, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent had invested heavily in two campgrounds, apparently believing that she would realize a substantial profit because of the expected increase in tourism associated with the 1984 World’s Fair in New Orleans. Respondent documented these checks as “loans” which she intended to repay with interest. However, when the World’s Fair did not bring the great numbers of tourists expected, respondent apparently experienced financial difficulties and was unable to fully repay the “loans.”

. In addition to the charges arising from the criminal conviction, the ODC filed a second count of formal charges against respondent. This second count was based on a complaint filed by B.E. Kramer stemming from respondent's alleged failure to pay an expert witness in a legal matter. The disciplinary board *826 ultimately dismissed this count, and the ODC has not objected to that dismissal. Accordingly, we will not address this count further.

. Supreme Court Rule XDÍ, § 19(E) provides an attorney convicted of a crime for purposes of disciplinary proceedings "may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he/she was convicted as determined by the statute defining the crime.”

. The formal hearing was scheduled at the Louisiana Correctional Center for Women in St. Gabriel, Louisiana, where respondent was incarcerated.

. La. R.S. 14:67 provides, in pertinent part:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hardlabor, for not more than ten years, or may be fined not more than three, thousand dollars, or both.

. La. R.S.14:68 provides, in pertinent part:
A. Unauthorized use of a movable is the intentional taking, or use of a movable which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the movable permanently. The fact that the movable so taken or used may be classified as an immovable, according to the law pertaining to civil matters, is immaterial.
B. Whoever commits the crime of unauthorized use of a movable having a value of one thousand dollars or less shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both. Whoever commits the crime of unauthorized use of a movable having'a value in excess of one .thousand dollars shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than five years, or both.

.It is of no moment that respondent’s misconduct occurred prior to the adoption of the amendments to Supreme Court Rule XIX, § 10(A) and § 24(A) which provide for permanent disbarment. These amendments do not represent a substantive change to the bar *829 disciplinary rules, nor do they result in the adoption of a new sanction which did not previously exist. Rather, these amendments simply represent a procedural change to Supreme Court Rule XIX in order to recognize a power this court has always possessed. In re: Pinkston, 02-3251 (La.5/20/03), 852 So.2d 966, cert denied, - U.S. -, 124 S.Ct. 1413, 158 L.Ed.2d 81; In re: Laudumiey, 03-0234 (La.6/27/03), 849 So.2d 515, cert. denied, — U.S. -, 124 S.Ct. 814, 157 L.Ed.2d 697 (2003)