ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Stephen R. Edwards, an attorney licensed to practice law in Louisiana but currently on interim suspension.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY
On November 6, 1998, a federal grand jury returned an indictment charging respondent and .others with racketeering, extortion, mail and wire fraud, money laundering, false statements, illegal wiretapping, and conspiracy in connection with the awarding of Louisiana riverboat gaming licenses.[2] United States v. Edwin Edwards, Stephen Edwards, Cecil Brown, Andrew Martin, Bobby Johnson, and Gregory Tarver, No. 98-165 on the Criminal Docket of the United States District Court for the Middle District of Louisiana. On May 9, 2000, a jury found respondent guilty of eighteen felony counts involving racketeering, extortion, mail and wire fraud, and money laundering; however, six mail and wire fraud convictions were subsequently | ¡.dismissed by the district court.[3] Respondent was sentenced to serve seven years in federal prison.
On August 23, 2002, the United States Court of Appeals for the Fifth Circuit affirmed respondent’s conviction and sentence. United States v. Edwards, 303 F.3d 606 (5th Cir.2002). The conviction became final on February 24, 2003, upon the denial of respondent’s petition for writ of certiorari by the United States Supreme Court. Edwards v. United States, 537 U.S. 1192, 123 S.Ct. 1272, 154 L.Ed.2d 1025 (2003).
DISCIPLINARY PROCEEDINGS
On July 17, 2000, the ODC filed one count of formal charges against respondent arising out of his conviction. On *720 August 2, 2000, respondent answered the formal charges and admitted his conviction, but requested that the disciplinary-proceeding be held in abeyance pending the finality of the conviction. Following the United States Supreme Court’s denial of certiorari in the criminal case, the disciplinary matter proceeded to a formal hearing on the merits, which was conducted before the hearing committee on May 30, 2003.
The ODC submitted documentary evidence in support of the formal charges. Respondent was incarcerated at the time of the hearing and thus did not appear in person, but his counsel called three attorneys to testify on his behalf. These witnesses provided testimony primarily in the nature of character evidence. Furthermore, each of the witnesses expressed his view that permanent disbarment should not be applied 13to respondent or is otherwise not an appropriate sanction for the crimes of which respondent was convicted.

Summary of the Documentary Evidence

The documentary evidence introduced by the ODC at the hearing included respondent’s indictment, a minute entry in the criminal case reflecting the jury’s verdict as to each count of the indictment, and the opinion of the United States Court of Appeals for the Fifth Circuit affirming respondent’s conviction and sentence.
The facts underlying respondent’s conviction are summarized in the Court of Appeals’ opinion. Essentially, respondent, along with his father, Edwin Edwards, the former governor of Louisiana, and three of their associates were convicted for their roles in five separate schemes to profit from Louisiana’s riverboat gaming license process by exploiting the former governor’s apparent ability to influence that process. The government alleged that each of the defendants was a member of a conspiracy to violate RICO and that the conspirators extorted money from various individuals who sought approval of riverboat casino projects. They promised to help these individuals obtain licenses in exchange for money and threatened to make obtaining the licenses impossible if they did not pay. The government also alleged that the conspirators attempted to launder the money obtained through the schemes. United States v. Edwards, 303 F.3d 606, 610-11 (5th Cir.2002).
The Court of Appeals determined the evidence was sufficient to support a finding that respondent played a major role in three of the five schemes in question. In the “Players Scheme,” respondent extorted Players Casino by demanding that Players retain him as a lawyer and hire his merchandising firm as a consultant in exchange for a license and other benefits. Between May 1993 and approximately ^February 1995, Players paid respondent and one of his associates more than one million dollars. Respondent was also involved in the extortion of Robert Guidry in connection with the licensing of the Treasure Chest Casino. Over a three-year period beginning in April 1994, respondent, his father, and one of their associates received more than one million dollars in the “Treasure Chest Scheme.” Finally, in the “15th Riverboat License Scheme,” so named because it was the.final license to be awarded by the Louisiana Gaming Control Board, respondent and his father extorted $400,000 from Eddie DeBartolo, Jr., then the owner of the San Francisco 49ers professional football team. Id.
At sentencing, the district court concluded that the loss attributable to respondent was $4,117,000, resulting in an upward adjustment of 13 levels under the sentencing guidelines. Of the total amount, $2,217,000 was attributed to the Players Scheme (including $180,000 in legal fees paid to respondent), $1.5 million was at *721 tributed to the Treasure Chest Scheme, and $400,000 was attributed to the 15th Riverboat License Scheme. Furthermore, the district court entered an order of forfeiture in the amount of $1.8 million (the amount found by the jury to be the proceeds of racketeering activity), for which respondent is jointly and severally liable as a member of the racketeering conspiracy. See id. at 643-44. The Court of Appeals concluded these findings are also supported by the record. Id.

Hearing Committee Recommendation

The hearing committee determined the ODC proved by clear and convincing evidence that respondent was convicted of a serious crime in violation of Rule 8.4 of the Rules of Professional Conduct. The committee found respondent intentionally violated a duty to the public and as a professional, and that his conduct resulted in ^substantial injury to the legal profession. The baseline sanction for respondent’s misconduct is disbarment. The committee recognized a number of aggravating factors, including respondent’s dishonest or selfish motive, pattern of misconduct, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law (admitted 1981). Furthermore, the committee acknowledged that the mitigating factors present in this case include the absence of a prior disciplinary record, respondent’s character and reputation, and remorse. Nevertheless, the committee concluded that under the facts presented, the mitigating circumstances are not of sufficient weight to detract from the “elaborate, widespread, deeply-rooted extortion and political corruption scheme” in which respondent so willingly participated. In particular, the committee explained:
Respondent’s duplicity, acting as an attorney in most of these endeavors, involved numerous victims and many millions of dollars. Not only did he take advantage of the influence of his father, who was the Governor of the State of Louisiana, he also apparently used his knowledge and experience as a licensed attorney in order to devise the schemes which succeeded in the extortion of significant amounts of money for his, and his co-conspirator’s, personal benefit. Considering the specificity of the acts, the extent of the planning involved in these conspiracies, as well as the magnitude of the funds that were extorted, it is unconscionable to consider the possibility that Respondent should not be permanently disbarred.
The committee recognized that respondent’s actions do not fall precisely within this court’s permanent disbarment guidelines. However, the committee concluded that respondent’s conduct is so egregious that he should no longer have the privilege of practicing law in this state. Accordingly, the committee recommended he be permanently disbarred.[4]
| (¡Respondent filed an objection to the sanction recommended by the hearing committee. The ODC concurred in the hearing committee’s recommendation.

Disciplinary Board Recommendation

The disciplinary board found the record supports the committee’s finding that respondent has been convicted of a serious crime warranting discipline. It determined respondent damaged his clients by using his status as an attorney as a tool in his extortion scheme, noting respondent convinced potential gaming licensees to hire him as a lawyer in order to buy his corrupt influence. The board further found that respondent “intentionally engaged in a scheme of political corruption *722 for monetary gain,” and “lined his own pockets and the pockets of his cronies” to the detriment of the citizens of this state. It concluded the profession was damaged by respondent’s actions, which were highly publicized during the criminal proceedings. Thus, the board found the baseline sanction for respondent’s misconduct is clearly disbarment.
The board adopted the aggravating and mitigating factors found by the hearing committee. Considering the weight of the aggravating factors and the nature of the misconduct at issue, the board then turned to a discussion of the sanction of permanent disbarment.
The board rejected respondent’s argument that permanent disbarment is not appropriate in this case because his conduct does not fit any of the guidelines set forth in Appendix E to Supreme Court Rule XIX. The board pointed out that the permanent disbarment guidelines are merely illustrative and were not intended to bind the court in its decision making. The board also dismissed respondent’s argument that permanent disbarment cannot be applied to him because that sanction did not exist at the time of his conviction. Concluding respondent’s criminal conduct is so serious |7that he should be forever prohibited from seeking readmission to the practice of law, the board recommended the imposition of permanent disbarment.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed depends on the seriousness of the offense and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
Respondent does not dispute that he has been convicted of serious crimes involving racketeering, extortion, and money laundering, and he concedes that disbarment is a proper sanction for such conduct. Accordingly, the sole issue presented for our consideration is whether respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
Respondent argues to this court that he cannot be permanently disbarred because his conviction does not fall within the parameters of the permanent disbarment guidelines set forth in Appendix E to the Rules for Lawyer Disciplinary Enforcement. However, respondent ignores the preamble to Appendix E, in which we explicitly ^provided that the guidelines are illustrative in nature and are not intended to bind this court in its decision-making process.
In In re: Kirchberg, 03-0957 (La.9/26/03), 856 So.2d 1162, we rejected a lawyer’s argument that his conviction for mail fraud arising out of a runner-based solicitation scheme did not fall within Guideline 6, which applies to insurance fraud, “including but not limited to staged accidents or widespread runner-based solicitation.” In doing so, we explained that “in assessing discipline in the case of an *723 attorney who has been convicted of a crime, we have often looked beyond the title of the offense to the facts of the conviction to determine the appropriate sanction.”
In the same way, it is clear respondent’s actions are the very type of conduct we sought to address when we codified permanent disbarment as an available sanction for attorney misconduct. Respondent’s conviction of crimes involving extortion and racketeering in connection with an extensive scheme designed to derive an illegal profit from Louisiana’s riverboat gaming license process convincingly demonstrates that he lacks the fundamental honesty and fitness to practice law in this state. Rather than upholding the law, a duty that is incumbent upon all members of the bar, respondent knowingly and intentionally extorted and defrauded riverboat applicants by soliciting money and other payments, often disguised as attorney’s fees, in exchange for which he offered to wield his corrupt influence to improperly manipulate the application process. The actions of respondent, which were covered extensively in the media, caused incalculable harm to the good reputation of the legal profession in Louisiana.[5] | ^Moreover, his misconduct struck at the integrity of state government and caused actual harm to every citizen of this state. Quite simply, the sheer magnitude of his misconduct is without parallel.[6]
Under these circumstances, we would plainly fail in our constitutional duty to regulate the practice of law and protect the public if we were to impose any sanction less than permanent disbarment. Accordingly, respondent must be permanently disbarred.[7]
*724 DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Stephen Randolph Edwards, Louisiana Bar Roll number 5295, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the | mpractice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J., concurs and assigns reasons.
JOHNSON, J., would disbar.

. In re: Edwards, 00-1940 (La.6/29/00), 765 So.2d 327.

. A 34-count superseding indictment was returned by the grand jury on August 4, 1999; however, it does not appear that a copy of the superseding indictment is contained in the record before us.

. The jury convicted respondent of Counts 1 and 2 (RICO), 12-15 (Players Casino extortion), 16 (interstate travel in aid of racketeering), 17-19 (Treasure Chest Casino extortion), 20-22 and 25-27 (mail and wire fraud in connection with the awarding of the fifteenth riverboat license), 31 (extortion in connection with the awarding of the fifteenth riverboat license), and 34 (money laundering). The district court later granted a new trial and dismissed the fraud convictions subject of Counts 20-22 and 25-27 in light of Cleveland v. United States, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000) (holding that mail and wire fraud convictions cannot be based upon a theory that the government was defrauded of its intangible right to issue licenses).

. One member of the committee dissented as to the sanction, concluding that respondent’s conduct warrants disbarment, but not permanent disbarment.

. Alluding to the publicity this case has received, respondent suggests that the board's recommendation of permanent disbarment is premised at least in part on his status as the son of a prominent four-term governor of the state, and argues he should not be treated more harshly than other members of the bar simply because "his name is Stephen Edwards instead of Stephen Smith.” We find this argument is completely without eviden-tiary support and is an insult to the integrity of the disciplinary system as well as this court. To some extent, respondent’s status as the son of former Governor Edwards put him in a unique position to accomplish the extortion of which he was ultimately convicted. However, the disciplinary charges are not based on respondent's last name; rather, they are based on his conduct. Such conduct clearly warrants substantial discipline regardless of the surname of the perpetrator.

. Respondent analogizes his case to In re: Bankston, 01-2780 (La.3/8/02), 810 So.2d 1113, in which this court imposed "ordinaiy” disbarment, as opposed to permanent disbarment, on a lawyer who accepted a bribe while serving as a state senator. However, Bankston is clearly distinguishable from the instant case. In contrast to the extensive extortion scheme in the instant case, which involved improper payments totaling millions of dollars, Bankston involved a single act of bribery in the form of a $1,555.01 payment for a sham rental of the lawyer's condominium. Although we in no way minimize the seriousness of the misconduct in Bankston, it obviously pales in comparison to the unprecedented extortion scheme engaged in by respondent and his co-defendants in the instant case.

.It is of no moment that respondent’s misconduct and resulting conviction occurred prior to the adoption of the amendments to Supreme Court Rule XIX, § 10(A) and § 24(A) which provide for permanent disbarment. These amendments do not represent a substantive change to the bar disciplinary rules, nor do they result in the adoption of a new sanction which did not previously exist. Rather, these amendments simply represent a procedural change to Supreme Court Rule XIX in order to recognize a power this court has always possessed. In re: Laudumiey & Mann, 03-0234 (La.6/27/03), 849 So.2d 515, cert. denied, - U.S. -, 124 S.Ct. 814, 157 L.Ed.2d 697 (2003); In re: Pinkston, 02-3251, 02-3252 (La.5/20/03), 852 So.2d 966, cert. *724 denied, - U.S. -, 124 S.Ct. 1413, 158 L.Ed.2d 81 (2004).