905 So.2d 1074 (2005)
In re Duke Ellington TILLEY, Jr.
No. 2005-B-0338.
Supreme Court of Louisiana.
June 24, 2005.

*1076 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Duke Ellington Tilley, Jr., a disbarred attorney.

PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1992. In 1998, he was disciplined for the first time, in the form of an admonition by the disciplinary board, for neglecting a legal matter and failing to cooperate with the ODC in its investigation. In 2000, respondent was publicly reprimanded for failing to promptly return an unearned fee and failing to cooperate with the ODC in its investigation.
On February 1, 2001 and April 10, 2001, respondent and the ODC filed joint petitions for consent discipline with the disciplinary board. The petitions proposed that respondent be disbarred for numerous instances of serious professional misconduct, including neglecting legal matters, failing to communicate with clients, charging an excessive fee, failing to provide an accounting and refund unearned fees, engaging in prohibited conflicts of interest, converting client funds to his own use, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, engaging in conduct prejudicial to the administration of justice, and failing to cooperate with the ODC in its investigation. The two petitions for consent discipline were consolidated by the board, which recommended the proposed discipline be accepted. On April 26, 2002, we accepted the petitions for consent discipline and disbarred respondent. In re: Tilley, 01-2454 (La.4/26/02), 814 So.2d 1289 ("Tilley I").

FORMAL CHARGES

Count I
Respondent was ordered to appear in the Baton Rouge City Court on October 31, 2001 to answer a judgment debtor rule filed against him as a defendant in a civil case. Respondent was not in the courtroom when the case was called because he was handling a criminal matter for a client, and a bench warrant was issued for his arrest. Shortly after the plaintiff's attorney left, respondent arrived for the rule and addressed the presiding judge, Judge Suzan Ponder, from the audience. Judge Ponder called the plaintiff's attorney, who informed her he would return to the courtroom immediately. As a result, Judge Ponder requested that respondent have a seat and wait. Respondent requested Judge Ponder's permission to go to the criminal court (where his clients' matters were pending) and inform that court that he needed to attend to his judgment debtor rule. Judge Ponder denied this request and directed respondent to remain in her courtroom. Nonetheless, respondent left the courtroom, informing the bailiff that he would "be right back." Shortly thereafter, the plaintiff's attorney returned to the courtroom. After approximately fifteen minutes, respondent returned to the courtroom and the plaintiff's attorney was able *1077 to conduct the judgment debtor examination.
In November 2001, Judge Ponder filed a disciplinary complaint against respondent for his failure to obey the court's orders.[1] In response to the complaint, respondent indicated he felt Judge Ponder's conduct was "an abuse of her discretion and not within the proper decorum that a judge should exhibit against another officer of the court."
The ODC alleged that respondent's conduct constituted a violation of Rules 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

Count II
In April 2000, James and Valerie Favorite retained respondent to represent their son in a criminal matter. Mr. Favorite signed a contract of employment in which he agreed to pay a flat fee of $10,000 plus expenses if the case was resolved without a trial and $15,000 if it went to trial. Thereafter, the Favorites paid respondent a total of $10,000 in three installments. Approximately six months later, before the conclusion of the criminal case, the Favorites terminated respondent and hired another attorney. Their new attorney requested a copy of respondent's file, an accounting, and a refund of unearned fees. Respondent failed to provide an accounting or refund any unearned fees, and he declined to participate in the Louisiana State Bar Association's Alternative Fee Dispute Resolution program.
In May 2002, the Favorites filed a disciplinary complaint against respondent, alleging the following: (1) he took their money but did no work on the case, (2) he failed to communicate with their son regarding his case, (3) he failed to provide them with status updates, and (4) he failed to hire an investigator pursuant to their requests.
In response to the complaint, respondent asserted that he had earned the entire $10,000 fee by the time he was terminated because he had spent more than 120 hours working on the case. He also stated that the Favorites had no legitimate reason to change attorneys. Respondent explained that he (1) filed a motion for and was granted a preliminary examination, (2) filed a motion to have bail set and another motion to reduce bail, eventually succeeding in getting bail reduced so the Favorites could post a bond for their son, (3) filed motions to discover the names of witnesses and read witness transcripts, (4) visited his client in jail several times and received collect calls from him, (5) visited the Favorites at their home to explain his strategy and the purpose of the motions, (6) interviewed witnesses at his office, at the jail, and at the Favorites' home, (7) filed a motion to get permission to interview the state's witnesses, and (8) conducted extensive research in preparation of several defenses for the case. Respondent further claimed that the Favorites owed him an additional $5,000 because he had been preparing for trial when he was terminated and that they should have paid him instead of posting bail for their son.
The ODC alleged that respondent's conduct constituted a violation of Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), *1078 and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct.

Count III
In October 2000, Virgie Hart paid respondent $625 to handle her aunt's succession. Respondent sent letters to various banks and ascertained that the decedent's estate was worth only $656.98. After encountering other problems,[2] respondent concluded it would not be economically feasible to open a succession. Instead, respondent decided to request the $656.98 directly from the bank by presenting an original sealed copy of the decedent's will and a certified copy of her death certificate. However, respondent was disbarred in Tilley I before he was able to complete this task.[3] Respondent failed to keep Ms. Hart advised of the status of her case throughout the representation, and thereafter, failed to inform her of his disbarment.
In May 2002, Ms. Hart filed a disciplinary complaint against respondent, alleging that he neglected her legal matter and failed to communicate with her. She also stated that his office was always locked and his telephone was recently disconnected. Furthermore, she requested the return of the legal fee she paid.
After receiving at least two letters from the ODC, respondent responded to the complaint, indicating he would send Ms. Hart the will and death certificate in his possession and would refund the fees she had paid him. Ms. Hart eventually received the will and death certificate, but never received a refund of the legal fee she paid to respondent.
The ODC alleged that respondent's conduct constituted a violation of Rules 1.3, 1.4, 1.16(d), and 8.1(c) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

Count IV
In November 2001, Warren Scott, III retained respondent to handle several criminal matters on his behalf. In May 2002, Mr. Scott filed a disciplinary complaint against respondent, alleging that respondent failed to follow his instructions regarding his defense, failed to adequately communicate with him, failed to inform him of his disciplinary problems, did not earn his fee, and failed to provide him with a copy of his entire file following his disbarment.
In response to the complaint, respondent stated that Mr. Scott and his parents "think they know the law and try to run the defense." He further stated that he explained to Mr. Scott's parents that he "would not tolerate their interference in [his] representation of their son, nor would [he] allow him to be co-counsel." Respondent also claimed he thoroughly evaluated all of Mr. Scott's cases, conferred with the prosecutor to get some of the charges withdrawn, interviewed witnesses, requested the issuance of subpoenas, and filed a motion to sever the charges. He further claimed to have informed Mr. Scott and his parents of his strategies. Respondent was disbarred before the motion to sever was heard, but asserted that Mr. Scott's parents were behind on their payments and still owed him for the work he had performed.
*1079 The ODC alleged that respondent's conduct constituted a violation of Rules 1.3, 1.4, and 1.16(d) of the Rules of Professional Conduct.

Count V
In February 2002, two months before he was disbarred but after he entered into the joint petitions for consent discipline forming the basis of Tilley I, respondent was retained by Stella Tillman to represent her son in a criminal matter. Respondent failed to inform Ms. Tillman that his disbarment was pending and accepted five payments from her totaling $2,800. Two of the payments were made subsequent to respondent's disbarment.
In October 2002, Ms. Tillman filed a disciplinary complaint against respondent, alleging that he neglected her son's criminal matter and failed to communicate with them. At the formal hearing of this matter, respondent claimed he met with both Ms. Tillman and her son, filed the required motions, and appeared at the arraignment. He also planned to negotiate a plea bargain on his client's behalf but was disbarred before he was able to do so. Respondent stated that he would refund the money Ms. Tillman paid him.
The ODC alleged that respondent's conduct constituted a violation of Rules 1.3, 1.4, and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS
The ODC filed five counts of formal charges against respondent on September 8, 2003. Respondent was served with the charges and answered with a general denial. The matter proceeded to a formal hearing before the hearing committee. Respondent, Judge Ponder, Mr. and Mrs. Favorite, Ms. Hart, and Ms. Tillman testified in person before the committee. The ODC was unable to serve Mr. Scott with a hearing subpoena, and accordingly, the evidence relating to Count IV was proffered.

Hearing Committee Recommendation
In Count I, the hearing committee found respondent failed to appear as directed in Judge Ponder's courtroom, resulting in the court issuing a bench warrant for his arrest. Although respondent returned to the courtroom, he later left to attend to other matters despite Judge Ponder's order that he remain until the judgment debtor rule could be conducted. Based on these factual findings, the committee determined that respondent violated Rules 3.4(c) and 8.4(d) of the Rules of Professional Conduct.
Turning to Count II, the committee found that respondent's client was Donald Favorite, although Donald's parents paid respondent a fee of $10,000. Because Donald did not testify at the hearing, and no evidence was presented that respondent failed to communicate with him, the committee found the ODC failed to prove respondent violated Rules 1.3 or 1.4. However, the committee found respondent failed to provide the Favorites with an accounting or refund any unearned fee following their termination of the representation. Based on this factual finding, the committee determined that respondent violated Rule 1.16(d).
As to Count III, the committee determined Ms. Hart hired respondent to locate and procure assets of her aunt's succession, paying him a total of $625. It found respondent's testimony regarding the attempts he made to identify bank accounts and other assets of Ms. Hart's aunt to be credible. However, it concluded respondent did not keep Ms. Hart advised of the status of the case, despite her numerous attempts to communicate with him. Additionally, the committee found respondent *1080 failed to refund Ms. Hart's money or provide an accounting. Based on these factual findings, the committee determined that respondent violated Rules 1.4 and 1.16(d). The committee found the ODC failed to prove a violation of Rules 1.3 and 8.1(c).
After considering Count IV, the committee observed that the ODC submitted no testimony in support of this count. It further determined that all of the ODC's proffered exhibits are hearsay. Accordingly, the committee found the ODC failed to prove any violation of the Rules of Professional Conduct.
Turning to count V, the committee determined that respondent's client was Shedrick Tillman, although he was hired by Ms. Tillman. Because Shedrick Tillman did not testify at the hearing, and no evidence was presented that respondent failed to communicate with him, the committee found the ODC failed to prove a violation of Rules 1.3 and 1.4. However, the committee determined respondent failed to advise Ms. Tillman of his pending consent discipline and subsequent disbarment and accepted payments from her despite the fact that he would not be able to complete the work for which he had been retained. Based on these factual findings, the committee determined that respondent violated Rule 8.4(c).
In determining an appropriate sanction, the committee determined that respondent acted knowingly and caused injury to his clients and the legal system. The baseline sanction for his misconduct is a suspension from the practice of law.
As aggravating factors, the committee recognized respondent's prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1992). The committee found no mitigating factors are present.
Under these circumstances, the committee determined that respondent's misconduct warranted a three-year suspension from the practice of law. The committee recommended that respondent be required to refund unearned fees due to Ms. Hart and Ms. Tillman and pay all costs of these proceedings.
Neither respondent nor the ODC objected to the hearing committee's recommendation.

Disciplinary Board Recommendation
After reviewing the record of this matter, the disciplinary board adopted the hearing committee's factual findings and application of the Rules of Professional Conduct. The board found that respondent violated duties owed to his clients, the legal system, and as a professional. His conduct was intentional and caused substantial harm.
The board agreed with the aggravating factors as found by the committee and also agreed that no mitigating factors are present. It further agreed that the appropriate baseline sanction is a suspension from the practice of law.
The board then turned to consideration of permanent disbarment under Guideline 9 (instances of serious attorney misconduct preceded by suspension or disbarment for prior instances of serious attorney misconduct) of Supreme Court Rule XIX, Appendix E. Reasoning that "respondent's commission of serious acts of misconduct while having knowledge of his imminent disbarment, coupled with his acceptance of fees following his actual disbarment, places him within the purview of this guideline," the board recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to provide an accounting to the Favorites, make restitution to Ms. Hart and Ms. Tillman, and be assessed with all costs and expenses of these proceedings.
*1081 Although neither respondent nor the ODC filed an objection to the board's recommendation, this court ordered briefing addressing the issue of an appropriate sanction. Both respondent and the ODC filed briefs in response to the court's order.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our review of the record, we conclude there is no error in the hearing committee's detailed factual findings. The evidence in the record establishes in a clear and convincing fashion that respondent disobeyed a direct court order, failed to provide an accounting to Mr. and Mrs. Favorite, failed to refund fees owed to two of his clients, failed to keep Ms. Hart apprised of his work on her aunt's succession matter, and engaged in dishonest conduct when he accepted legal fees from Ms. Tillman during and after the proceedings in Tilley I. This conduct constitutes a violation of Rules 1.4, 1.16(d), 3.4(c), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
In determining an appropriate sanction, we find our opinion in In re: Turnage, 03-0456 (La.9/26/03), 856 So.2d 1183, to be instructive. In Turnage, the respondent's misconduct was similar to the misconduct at issue in the instant case, involving failure to act with diligence, failure to communicate, failure to properly terminate representation, and disobedience of an obligation under the rules of a tribunal. We concluded a three-year suspension was an appropriate sanction for this misconduct.
Nonetheless, the disciplinary board urges us to consider permanently disbarring respondent pursuant to Guideline 9 of the permanent disbarment guidelines, which applies to "instances of serious attorney misconduct preceded by suspension or disbarment for prior instances of serious attorney misconduct." [emphasis added]. Although the board concedes that the bulk of respondent's current misconduct did not precede his disbarment in Tilley I, it suggests the case falls within the spirit of Guideline 9 because respondent was aware that his petition for consent discipline in Tilley I, in which he sought disbarment, was pending at the time he engaged in the instant misconduct.
*1082 It is well settled that the permanent disbarment guidelines are illustrative in nature and are not intended to bind this court in its decision-making process. See In re Edwards, 04-0290 (La.7/2/04), 879 So.2d 718. Nonetheless, we see no justification to depart from the language of Guideline 9 under the facts of this case. Although it was likely that respondent would be disbarred at the time he committed the instant misconduct, the fact remains that he was not disbarred. Under these circumstances, we believe the imposition of permanent disbarment would be unduly punitive.[4]
Accordingly, we find the appropriate sanction for respondent's misconduct is a three-year suspension. Because respondent is currently disbarred and may not seek readmission until five years have passed from the effective date of our judgment in Tilley I, the three-year suspension we now impose shall run consecutively, with the effect that respondent may not seek readmission until a total of eight years have passed since the effective date of his disbarment in Tilley I. See, e.g., In re: White, 00-2732 (La.4/25/01), 791 So.2d 602.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Duke Ellington Tilley, Jr., Louisiana Bar Roll number 21915, be suspended from the practice of law for a period of three years, to run consecutively to the minimum five-year period for seeking readmission from the disbarment imposed in In re: Tilley, 01-2454 (La.4/26/02), 814 So.2d 1289. Respondent is ordered to provide a complete accounting to James and Valerie Favorite and to refund any unearned portion of the legal fee he was paid in that matter. Respondent is further ordered to make restitution to Virgie Hart in the amount of $625 and to Stella Tillman in the amount of $2,800. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Judge Ponder also scheduled a contempt rule against respondent. When respondent failed to appear for the contempt hearing, a warrant was issued for his arrest. Eventually, respondent appeared to answer the contempt charge and was fined $100, which he paid.
[2] Apparently, an elderly relative of Ms. Hart's had a key to the decedent's safety deposit box but refused to turn it over to Ms. Hart or tell her where the box was located. Respondent also had trouble locating the notary and witnesses who signed the will.
[3] Ms. Hart eventually obtained the $656.98 from the bank without respondent's assistance.
[4] We note that over a year elapsed between the filing of the petitions for consent discipline and the date we ultimately imposed discipline in Tilley I. Our subsequent amendment of the consent discipline provisions in Supreme Court Rule XIX, § 20 now mandates that petitions for consent discipline are filed directly in this court, allowing for more expeditious consideration of these petitions. Accordingly, the delay between the filing of the petition and its disposition which occurred in this case should not reoccur in the future.