ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
| ,This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Sean Daniel Alfortish, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. In re: Alfortish, 11-2190 (La.10/19/11), 72 So.3d 850.
UNDERLYING FACTS
Respondent was admitted to the practice of law in Louisiana in 1998. After admission, respondent maintained a private law practice. He also served as a magistrate judge in Kenner.
In March 2005, respondent was elected as president of the Louisiana Horsemen’s Benevolent and Protective Association 1993, Inc. (hereinafter referred to as the “HBPA” or the “association”), a non-profit corporation recognized by law as the representative of horse owners and trainers in the State of Louisiana. In March 2008, respondent was reelected to a second term as HBPA president. He served in that capacity until November 2010, when he was indicted by a federal grand jury in the Eastern District of Louisiana on twenty-nine counts of conspiracy and fraud charges relating to the HBPA.
In August 2011, respondent pleaded guilty to one felony count of conspiracy to commit mail, wire, healthcare, and identification document fraud; the remaining 12counts of the indictment were dismissed pursuant to a plea agreement with the Government. In the factual basis accompanying the guilty plea, respondent admitted that he and others conspired to rig the outcome of the March 2008 HBPA elections. An object of the conspiracy was to reelect respondent as HBPA president and to elect his favored candidates as members of the association’s board of directors.[1] In order to accomplish the object of the conspiracy, respondent and his co-conspirators prepared and cast falsified election ballots.[2] Following the counting of the *1026 ballots, respondent was declared to be the winner of the election for president, and likewise, all of respondent’s candidates for the HBPA board of directors were elected. When these election results were subsequently challenged pursuant to the HBPA bylaws, respondent presided over the hearing held in the matter, knowing that he had participated in mailing falsified ballots, and directed others to do so.
Another object of the conspiracy was to defraud the Horsemen’s Medical Benefits Trust, which received statutorily dedicated funds out of horse racing proceeds to operate a medical benefit plan for Louisiana horsemen. Respondent admitted in the factual basis that he systematically diverted funds from the trust for his own benefit under the pretense of paying administrative expenses, when in fact most of the expenses had nothing to do with the administration of medical claims.
|sIn February 2012, respondent was sentenced to serve 46 months in a federal penitentiary, followed by a three-year period of supervised release. Respondent was also ordered to pay $105,141 in restitution to the HBPA.[3] The restitution obligation has been satisfied.
DISCIPLINARY PROCEEDINGS
In November 2011, the ODC filed one count of formal charges against respondent, alleging that his conduct as set forth above violated Rules 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent answered the formal charges and admitted his conviction, but requested a hearing in mitigation. The disciplinary proceeding was then stayed pending respondent’s sentencing.
Following sentencing, the stay was lifted and this matter was set for a hearing before the hearing committee. Respondent filed a pre-hearing memorandum in which he acknowledged that his misconduct warranted ordinary disbarment; however, he argued that he should be permitted to apply for readmission to the practice of law in the future. In its pre-hearing memorandum, the ODC argued that respondent has engaged in criminal conduct involving insurance fraud, thereby warranting consideration of the sanction of permanent disbarment under Guideline 6 of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E.

_[4Formal Hearing

After several continuances of this matter, the formal hearing was conducted by *1027 the hearing committee in March 2013.[4] The ODC introduced documentary evidence pertaining to respondent’s criminal conviction and then rested.
Respondent testified on his own behalf before the committee. Respondent also called several character witnesses to testify in person, and introduced copies of 38 supporting letters and e-mails submitted to the federal court in connection with his sentencing.
In his testimony before the committee, respondent explained that he is not a “thief,” nor is he a dishonest person. Respondent acknowledged that he is bound by the factual basis of his guilty plea but also indicated that the factual basis does not express a true picture of his conduct.[5] Respondent testified that he regrets his actions, particularly because of their effect on his family, friends, and the legal profession. Respondent concluded by urging the committee not to recommend permanent disbarment for “this one isolated incident that seems to follow me like a black cloud throughout my life.”

Hearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
lain 2012, respondent pleaded guilty to a single felony count of conspiracy to commit mail, wire, identity document, and healthcare fraud. The factual basis of the plea establishes that respondent “entered into a conspiracy to rig the outcome” of the March 2008 HBPA elections. At the time of the election, respondent was the incumbent president of the association, and a dispute had arisen within the board of directors as to respondent’s management of the HBPA. In furtherance of the conspiracy, respondent (and others at his direction) traveled out of state and mailed fraudulent ballots from those locations so that the ballots would bear postmarks appropriate to the residences of the supposed voters. At least some of the expenses relating to the conspiracy were charged to and paid from the HBPA’s administrative account.
Additionally, during his tenure as president, respondent used HBPA funds for personal expenses, including travel and gifts. A portion of these expenses were billed to the HBPA’s Medical Benefits Trust, which was supposed to be used exclusively to pay medical benefits to jockeys and other industry personnel who were beneficiaries of the trust.
In pleading guilty to the criminal charge, respondent specifically admitted that he was guilty of the allegations against him. He also admitted that the factual basis supporting the charge was accurate.
Based on these factual findings, the committee determined that respondent violated Rules 8.4(b) and 8.4(c) of the Rules of *1028 Professional Conduct. His actions involved the fraudulent taking of money from the HBPA healthcare trust, and engaging in a scheme to fix his own reelection as president of the HBPA. This conduct reflects adversely on respondent’s honesty, trustworthiness, and fitness as a lawyer.
Respondent intentionally violated duties owed to the public and to the profession, causing actual harm to the HBPA. The committee found the following ^aggravating factors are present: a prior disciplinary record,[6] a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted 1993). In mitigation, the committee recognized the following: a cooperative attitude toward the proceedings and character or reputation. The committee found the payment of restitution to be neither an aggravating nor mitigating factor, reasoning that the restitution was not paid by respondent, but rather by the insurer for the HBPA.[7]
The committee concluded that respondent engaged in a fraudulent scheme to steal the HBPA election. He also paid the expenses of the scheme by using money set aside by the association to pay employee healthcare expenses. These actions directly resulted in harm to the legal profession, as it was well known within the community that respondent is a lawyer. Under these circumstances, the impact of respondent’s criminal conduct is not minimized by the applicable mitigating factors. Accordingly, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation. However, in his brief to the disciplinary board, respondent argued that his misconduct “can only by the furthest stretch of the imagination be considered insurance fraud,” and in any event is not so egregious as to warrant permanent disbarment.
| tDisciplinary Board Recommendation
After review, the disciplinary board determined that the hearing committee’s factual findings are supported by the record and are consistent with the factual basis underlying respondent’s conviction. Based on these facts, the board determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The board adopted the committee’s findings with respect to duties violated, respondent’s mental state, and the harm caused. The board determined that the applicable baseline sanction is disbarment. The board found the following aggravating factors are present: a prior disciplinary record, a dishonest or selfish motive, refusal to acknowledge the wrongful nature of *1029 the conduct, substantial experience in the practice of law, and illegal conduct. In mitigation, the board recognized the following: a cooperative attitude toward the proceedings, character or reputation, and imposition of other penalties or sanctions.
Turning to the sanction issue, the board acknowledged that the conduct underlying respondent’s criminal conviction does not fall squarely within the scope of the permanent disbarment guidelines, particularly Guideline 6, pertaining to insurance fraud. Nevertheless, the board noted that this fact does not preclude the imposition of permanent disbarment in appropriate cases. See, e.g., In re: Bradley, 11-0254 (La.4/25/11), 62 So.3d 52 (permanent disbarment imposed upon a lawyer who conspired to bribe a state official to fraudulently obtain tax credits for a co-conspirator’s film company). Considering respondent’s extensive scheme to secure his reelection as the HBPA president, and given the significant harm caused to the HBPA by respondent’s conduct, the board found that permanent disbarment is appropriate, regardless of the applicability of “a particular guideline found in the guidelines for permanent disbarment.”
|sBased on this reasoning, the board recommended that respondent be permanently disbarred.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).[8]
DISCUSSION
When disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent’s crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); In re: Boudreau, 02-0007 (La.4/12/02), 815 So.2d 76; Louisiana State Bar Ass’n v. Wilkinson, 562 So.2d 902 (La.1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Perez, 550 So.2d 188 (La.1989).
In the instant case, respondent was convicted of conspiracy to commit mail, wire, healthcare, and identification document fraud. This crime is a felony under federal law and clearly warrants serious discipline. Indeed, respondent concedes the appropriate sanction for such misconduct is disbarment. Therefore, the sole question presented for our consideration is whether respondent’s conduct is so egregious that he should be permanently prohibited from applying for readmission to the bar.
|flWe have long recognized that “[hjigh standards of honesty and righteousness have been erected for those engaged in the legal profession ...” Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). Historically, disbarment was the harshest sanction available for attorneys who breached this high standard of conduct. While disbarment results in *1030 the attorney being stricken from the bar rolls, the attorney has the ability to apply for readmission five years after the effective date of disbarment, although the decision to readmit the attorney rests in this court’s sole discretion. Effective August 1, 2001, in the exercise of our constitutional authority to regulate the practice of law, we adopted amendments to Supreme Court Rule XIX, § 10 and § 24 to provide for the sanction of permanent disbarment. In our commentary accompanying the amendment, we explained, “The amendments reflect the judgement of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case ...”
Our jurisprudence has made it clear we do not impose permanent disbarment lightly. In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934. Rather, permanent disbarment is reserved for those cases where the attorney’s conduct convincingly demonstrates that he or she does not possess the requisite moral fitness to practice law in this state. In re: Petal, 10-0080 (La.3/26/10), 30 So.3d 728; In re: Muhammad, 08-2769 (La.3/4/09), 3 So.3d 458. We have not hesitated to permanently disbar attorneys who have committed serious crimes reflecting on their honesty and integrity. In re: Bradley, 11-0254 (La.4/25/11), 62 So.3d 52; In re: Edwards, 04-0290 (La.7/2/04), 879 So.2d 718; In re: Kirchberg, 03-0957 (La.9/26/03), 856 So.2d 1162.
In the factual basis accompanying his guilty plea, respondent admitted that he and others conspired to rig the outcome of the March 2008 HBPA elections by preparing and casting falsified election ballots. Respondent further admitted in the | infactual basis that he systematically diverted funds from a medical trust for his own benefit under the pretense of paying administrative expenses, when in fact most of the expenses had nothing to do with the administration of medical claims. Clearly, such conduct reveals a fundamental lack of honesty and integrity.
In addition, we find it significant that respondent, as a former magistrate judge and an officer of the HBPA, occupied a position of public trust. We have recognized that an attorney in a position of public trust is held to even a higher standard of conduct than an ordinary attorney. In re: Naccari, 97-1546 (La.12/19/97), 705 So.2d 734; In re: Huckaby, 96-2643 (La.5/20/97), 694 So.2d 906. By his fraudulent actions, which received significant coverage in local media, respondent harmed the public’s perception of the legal profession in this state.
In summary, we conclude respondent’s actions clearly and convincingly demonstrate that he lacks the fundamental moral fitness to practice law in this state. In light of the glaring lack of honesty and integrity revealed by respondent’s conduct, we can conceive of no circumstances under which we would ever allow him to be readmitted to the practice of law in Louisiana. He must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Sean Daniel Al-fortish, Louisiana Bar Roll number 22227, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Su *1031 preme Court Rule XIX, § 10.1, |nwith legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
KNOLL, Justice, dissents for reasons assigned.

. During respondent's first term as president, certain members of the HBPA board of directors had challenged his management of the finances of the association. Indeed, in early 2008, one member of the board sued respondent and the HBPA to require the production of information about the organization’s finances. Respondent therefore sought to replace these directors with board members who would be less likely to question his activities.

. HBPA members were entitled to vote for the officers and directors of the association, but the association’s bylaws required that in order to be counted as valid, an election ballot had to be enclosed in an envelope bearing the *1026 Social Security number of an HBPA member and the ballot had to be received by the HBPA's accountants via the United States mail. At respondent's direction, his co-conspirators falsified ballots from eligible voters who were unlikely to vote in the election and used the voters’ Social Security numbers to make the ballots appear legitimate; they then flew to various cities in Ohio, Kentucky, Texas, and Florida to mail the ballots so each would bear a U.S. postmark appropriate to the residence of the supposed "voter." The costs of such travel were paid from an HBPA administrative account.

. The restitution amount includes $42,016 in expenses improperly allocated to the Medical Benefits Trust; $33,304 in expenses related to the rigging of the 2008 HBPA election and the subsequent challenge to the election; $4,821 paid to a private investigator to follow an HBPA employee during the criminal investigation; and $25,000 paid to respondent as a concealed reimbursement for the amount he paid to settle a sexual harassment claim against him.

. Respondent was incarcerated on the date of the hearing and thus did not attend in person; however, he did participate by telephone. He also participated in the disciplinary board panel arguments by telephone and through counsel. Respondent had been released from federal prison by the date this court heard oral argument, and he appeared personally for arguments, along with his counsel.

. For example, respondent testified that at all times the amounts transferred from the Medical Benefits Trust to the HBPA were kept on the books as a loan owed by HBPA to the trust pursuant to a longstanding practice that predated his term as president. He also argued that the ODC’s claim of insurance fraud should be rejected because the HBPA’s books had been audited by accounting firms who found no wrongdoing. The hearing committee accepted this testimony as a proffer, but ultimately declined to give it any weight in mitigation.

. Respondent’s prior disciplinary record consists of an admonition in 2010 for failing to properly handle legal fees he was obligated to share with co-counsel. Although respondent did violate the Rules of Professional Conduct in that matter, the committee noted that there was no suggestion he had wrongfully taken any of the money. Therefore, the committee gave little weight to the aggravating factor of prior discipline.

. Respondent asserts in his brief to this court that the committee erred in finding that restitution should not be considered as a mitigating factor. According to respondent, he filed suit against the HBPA and its accountants for failing to advise him that paying the association’s bills with money from the medical benefits trust was illegal. The suit was settled by the HBPA's insurer; however, rather than paying the settlement to respondent, who would then send a restitution check to the HBPA, the insurer agreed to send the funds directly to the HBPA in satisfaction of respondent’s restitution obligation.

. On the morning of oral argument, respondent filed a motion to remand the case to the hearing committee for a new hearing. In support, respondent argues he was hampered in the presentation of his case due to his incarceration at the time of the original hearing. He seeks a remand in order to present additional evidence. We find no basis for a remand. Although we acknowledge respondent was incarcerated at the time of the hearing, he was allowed to participate by telephone and had a full opportunity to present mitigating evidence. Accordingly, the motion to remand is denied.